UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CUNEYT KUTLUCA and TANIQUA BROWN, Individually and on behalf of all others similarly situated,

   Plaintiffs,

v.

PQ NEW YORK, INC., PQ OPERATIONS, INC., PQ LICENSING S.A., PQ 933 BROADWAY, INC., PQ CENTRAL PARK INC., and DOES 1-51,

   Defendants.

Case No. 1:16-cv-03070-VSB

---

## DECLARATION OF MICHAEL BELLOISE

I, Michael Belloise, hereby declare and state that the following representations are true and correct on the basis of my personal knowledge:

1. I am employed by TriNet Group, Inc. ("TriNet") as the Director of Information Security. In my role, I am familiar with the online tools that TriNet makes available to its client's worksite employees. Specifically, I was involved in the creation, and am currently involved in the maintenance, of the TriNet Passport system and the online processes by which individuals are provided with TriNet's Terms and Conditions Agreement ("TCA") and the Dispute Resolution Protocol ("DRP"), are allowed to review and acknowledge the TCA and DRP, and by which individuals agree to abide by both. Notably, the processes by which individuals are provided access to the TCA and DRP, are allowed to review and acknowledge receipt of the TCA and DRP, agree to abide by the provisions of both, and knowingly and voluntarily accept the DRP have not changed since the TriNet Passport system launched in

January 2013. Finally, in my position, I have access not only to the TriNet Passport system and the information contained in it, but also to the user audit log for each individual who creates their own personal password protected account. The audit logs create an account of each action completed by each unique user, including information regarding the time of access, the individual's user name and personal identification, and the Internet Protocol ("IP") address where he or she accessed the TriNet Passport system.

2. TriNet is a cloud-based professional employer organization ("PEO"), which administers payroll and health benefits for clients such as PQ.

3. PQ New York, Inc. and Le Pain Quotidien (together, "PQ") became a client of TriNet's in approximately December 2014, at which time, TriNet began administering payroll and benefits for all current and newly-hired PQ employees.

4. In TriNet's documents, including the TCA and DRP, PQ is referred to as a "client" or "customer" of TriNet and also as the "worksite employer."

5. When PQ became a client of TriNet's, PQ's then-current employees, such as Plaintiff Taniqua Brown ("Ms. Brown"), were brought onboard to TriNet's payroll and benefit processing systems by accessing and registering at TriNet Passport.

6. Similarly, employees that PQ hired after it became a TriNet client, such as Plaintiff Cuneyt Kutluca ("Mr. Kutluca"), accessed TriNet Passport as part of TriNet's onboarding process.

7. Worksite employees who were provided access to TriNet Passport and who received payroll processed by TriNet retained their status as worksite employees of the client company (here, PQ), while TriNet acted as the PEO. Beginning in January 2015, all applicants and employees of PQ were informed at the commencement of their employment of the existence

2

of the PEO relationship and TriNet's status as the PEO.

8. TriNet Passport is a password-protected on-line environment. When worksite employees first access the TriNet Passport portal, they encounter a "Log On" screen. At this screen, they must enter both a Username and a temporary Password, which the worksite employer provides them. Otherwise, they cannot proceed. TriNet worksite employees are required to change their temporary password and to generate their own unique passwords at the outset of their employment as part of TriNet's onboarding process. Thereafter, they can use that same Password, along with their Username, to log on to their TriNet Passport account. This password security protocol functions exactly like many familiar password-protected sites on the Internet.

9. Once a worksite employee creates his or her own unique password, nothing in TriNet's system shares that password with anyone. The password cannot be manually retrieved from the system by anyone. TriNet designed and developed the system and internal security protocols to ensure each user's individual password security. Only the worksite employee user will know his/her password. If a user forgets his/her password, TriNet has no way to retrieve it. The only thing TriNet can do is manually "re-set" that user's TriNet Passport account to allow him/her to create a new password, just as if he/she were a new user. Furthermore, TriNet's security protocols do not permit anyone other than a user with the correct password to enter a worksite employee's individual TriNet Passport account. TriNet has the ability to "view" select screens of a worksite employee's TriNet Passport account, but we have no ability to directly access that account, to alter or change anything in the user's account, or to perform any functions within that TriNet Passport account. The TriNet Passport security protocols discussed above are the same now as they were in December 2014 when PQ first became a TriNet customer.

10. In approximately January 2013, TriNet implemented its dispute resolution protocol ("DRP"). Since that time, the first time a worksite employee logs into his/her TriNet Passport account, the worksite employee is presented with an electronic version of the DRP, which is part of TriNet's Terms and Conditions Agreement ("TCA") as the very first screen they see after login. The worksite employee is asked to carefully read TriNet's TCA, which contains the DRP, and there is no limitation on the time to do so. After being provided the opportunity to read the policies, including the DRP, each worksite employee is asked to acknowledge that he/she has "read and underst[ood] the contents of" the TCA and DRP and "agree[s] to abide by the terms and conditions" contained in the TCA and DRP.

11. TriNet's worksite employees cannot access the rest of the Passport system, which includes the mandatory Part I of Form I-9, until they accepted the terms of the TCA and DRP.

12. Once an individual is presented with the DRP through their TriNet Passport account, there is no time limit placed on the individual to review and either reject or accept the TCA, which contains the DRP. As such, because the DRP was presented to Mr. Kutluca and Ms. Brown through HR Passport, there was no specific time limit for them to review and accept the DRP. If Mr. Kutluca and Ms. Brown did not have enough time to read the TCA when they first logged into HR Passport, they could simply have logged in at another time.

13. I have reviewed the TriNet Passport system, including the individual TriNet Passport accounts created by Mr. Kutluca and Ms. Brown. Based on my review of the information contained therein, I was able to confirm that the DRP used by TriNet was electronically presented to Mr. Kutluca and Ms. Brown via their individual TriNet Passport accounts. A true and correct copy of the TCA in effect in December 2014 and February, when Mr. Kutluca and Ms. Brown first accepted the terms of the TCA and the DRP, is attached hereto

as **Exhibit "A."** This is the same DRP that was presented to Mr. Kutluca on or about February 24, 2015 and to Ms. Brown on or about December 28, 2014.

14. Section (d) of the DRP includes the following statement: "There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including, without limitation, uncertified class actions ("Class Action Waiver"); provided, however, that you may opt out of the Class Action by clicking this box before you click below to acknowledge this TCA." There is a box in line in the text that a worksite employee can click to opt out of the Class Action Waiver. A worksite employee can opt out of the Class Action Waiver and still agree and accept the rest of the terms of the DRP and the TCA.

15. To agree and accept the terms of the DRP, Mr. Kutluca and Ms. Brown were required to enter a valid e-mail address at the bottom of the screen and then click on a button marked "I Accept." Notably, Mr. Kutluca's and Ms. Brown's emails can only be provided by the individual accessing their TriNet Passport account using their username and unique password. Neither PQ nor TriNet has or has had the ability to change or alter the email address to be used on behalf of any individual employee. If an employee chooses not to accept the terms of the TCA and DRP, there is a "Reject" button for them to click, which is next to the "I Accept" button. If an employee selected "Reject," he or she automatically would be logged out of Passport and would not be allowed to access the rest of the portal.

16. When an individual clicks the "I Accept" button after being presented with the DRP for review, the column entitled "Accepted" in that individual's TriNet Passport account is marked with a "Y." If the individual has not clicked the accept button or clicks the "Reject"

5

button, the column entitled "Accepted" in their TriNet Passport screenshot is marked with a "N." As such, the "Y" or "N" under the Accepted column of the TriNet Passport screenshot directly correlates to whether the individual has accepted or rejected the DRP. Notably, neither TriNet, nor PQ has or has had access to change the information contained on the TriNet Passport account of any individual, including Mr. Kutluca and Ms. Brown. The information in this paragraph accurately describes the process and protocol in place since December 2014, when PQ first became a customer of TriNet.

17. I have reviewed Mr. Kutluca's and Ms. Brown's TriNet Passport accounts regarding their review and acceptance of the DRP. Mr. Kutluca's TriNet Passport account indicates that on February 24, 2015, Mr. Kutluca accepted the DRP by electronic acceptance through his TriNet Passport account using his username and unique password. The TriNet Passport account only indicates that an employee has accepted the DRP and sends a confirmation email to the employee with a copy of the same once an employee has logged into his/her TriNet Passport account using his/her username and unique password, entered a valid e-mail address, and the employee then clicks on the "I Accept" button at the bottom of the screen containing the TCA and DRP.

18. Ms. Brown's TriNet Passport account indicates that on December 28, 2014, Ms. Brown accepted the DRP by electronic acceptance through her TriNet Passport account using her username and unique password. The TriNet Passport account only indicates that an employee has accepted the DRP and sends a confirmation email to the employee with a copy of the same once an employee has logged into his/her TriNet Passport account using his/her username and unique password, entered a valid e-mail address, and the employee then clicks on the "I Accept" button at the bottom of the screen containing the TCA and DRP.

19. Based on the information detailed above, I have personally verified that Mr. Kutluca and Ms. Brown both electronically acknowledged and accepted both the DRP as described above in paragraphs 16 of this declaration.

20. The TriNet Passport system reflects that Mr. Kutluca used the e-mail address c_kutluca@hotmail.com.com and clicked the "I Accept" button to accept the TCA and DRP at 8:59:28 AM on February 24, 2015.

21. The TriNet Passport system reflects that Ms. Brown used the email address taniquabrown89@gmail.com and clicked the "I Accept" button to accept the TCA and DRP at 11:48:41 AM on December 28, 2014.

22. When a worksite employee accepts the DRP through his or her secure TriNet Passport account, the TriNet Passport system is designed to automatically generate an e-mail to that worksite employee ("Acceptance E-Mail"). The Acceptance E-Mail "confirm[s] … acceptance of TriNet's Terms & Conditions Agreement" (which includes the DRP), and also attaches an electronic PDF copy of the TCA, including the DRP. True and correct copies of the Acceptance E-Mails sent to Mr. Kutluca and Ms. Brown at the email addresses they provided, are attached hereto as **Exhibits "B" and "C"** respectively. The information in this paragraph accurately describes the process and protocol in place since December 2014 when PQ first became a customer of TriNet.

23. If Mr. Kutluca or Ms. Brown had opted out of the Class Action Waiver, then the copy of the TCA attached to their Acceptance E-Mails would have had a checkmark in the box for the Class Action Waiver in the DRP. A sample of the Acceptance E-Mail and the TCA attached thereto that was sent to a PQ employee who elected to opt out of the Class Action Waiver is attached hereto as **Exhibit "D."** The box for the Class Action Waiver in the DRP has

a checkmark. **Exhibit "B"** shows that Mr. Kutluca did not opt out of the Class Action Waiver because the box for the Class Action Waiver in the DRP does not have a checkmark. **Exhibit "C"** similarly shows that Ms. Brown did not opt out of the Class Action Waiver because the box for the Class Action Waiver in the DRP does not have a checkmark.

24. Based on my personal knowledge of the design and operation of TriNet Passport system, the contents of **Exhibits "B", "C" and "D"** establish that Mr. Kutluca and Ms. Brown ensured entry of valid e-mail addresses at the bottom of the screen containing the TCA and DRP in TriNet Passport and then clicked the "I Accept" button on February 24, 2015 and December 28, 2014, respectively, agreeing to abide by the terms and conditions of the TCA and the DRP attached as **Exhibit "A."** By doing so, Mr. Kutluca and Ms. Brown agreed to submit their claims to arbitration in lieu of pursuing them in court.

25. I obtained copies of **Exhibits "A", B", "C" and "D"** attached hereto from the records maintained by TriNet in Bradenton, Florida.

26. These documents were kept by TriNet in the ordinary course of its regularly conducted business activity.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this _____1st day of August, 2016, in _Bradenton, FL

_____
Michael Belloise