```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CUNEYT KUTLUCA, et al.,

                Plaintiffs,

            v.                              16 CV 3070(VSB)

NEW YORK, INC., et al.,

                Defendants.

------------------------------x
                                            New York, N.Y.
                                            July 29, 2016
                                            10:30 a.m.

Before:

                  HON. VERNON S. BRODERICK,

                                            District Judge

                        APPEARANCES

THE LAW OFFICE OF CHRISTOPHER DAVIS
     Attorneys for Plaintiffs
BY:  CHRISTOPHER Q. DAVIS
     RACHEL M. HASKELL


FOLEY & LARDNER, LLP
     Attorneys for Defendants
BY:  JAMES M. NICHOLAS
```

1                    (In open court; case called)
2              THE LAW CLERK:  Counsel please identify yourselves for
3    the record.
4              MR. DAVIS:  For plaintiffs and the punitive class and
5    collective class, Christopher Davis and Rachel Haskell.
6              Good morning, Judge.
7              THE COURT:  Good morning.
8              MR. NICHOLAS:  For defendants James Nicholas.  Good
9    morning, your Honor.
10             THE COURT:  Good morning.  You may be seated.
11             We're here for a premotion conference.  Let me just
12   review for the parties the documents I have in connection with
13   today's conference.  I have the plaintiffs' premotion letter
14   dated July 7th.  I have the defendants' premotion letter dated
15   July 7th also.  I have defendants' response dated July 12th.  I
16   have plaintiffs' response dated July 15th.  I have defendants'
17   premotion letter relating to their anticipated motion for a
18   stay.  I have plaintiffs' response on July 28th.  Then I have
19   the order in the *Langford v. Hansen Technology* case.
20             Are there any documents that I am missing from the
21   plaintiffs?
22             MR. DAVIS:  No, your Honor.
23             THE COURT:  From the defense?
24             MR. NICHOLAS:  No, your Honor. Although, I believe
25   the parties filed a joint letter with the Court dated July 21st

G7t6kutc

1   which was the case management plan.
2           THE COURT:  Yes.  The case management plan and
3   scheduling order.
4           MS. HASKELL:  Yes.
5           THE COURT:  So I do have some questions.  As I
6   understand it the issue relates to whether or not the case
7   should be arbitrated, and there has been a request for a stay
8   of discovery in connection with that.  There is also a
9   premotion letter with regard to conditional class
10  certification, which defense says should be held in abeyance.
11  So I do have some questions with regard to the proposed
12  motions, and I don't know, Mr. Davis, whether it is going to be
13  you or Ms. Haskell who will respond to this, but how do you
14  respond to Paragraph 9(F) to the TCA that appears to suggest
15  that Lapan can enforce the agreement?  Specifically it says,
16  "The DRP is a full and complete agreement relating to
17  arbitration as the means to resolve covered disputes between
18  you and TriNet and between you and your work site employer and
19  unless the DRP is waived by your work site employer or
20  superseded by other terms and conditions of your employment
21  with your work site employer."
22          MR. DAVIS:  Your Honor, it is not a covered dispute
23  under the terms of 9(F).  It only relates to disputes that are
24  covered.  Under the DRP, it is not a covered dispute.  If you
25  look under Section 3(D)(3), it expressly carves out any dispute

1   that relates to commissions, bonuses or anything that you

2   believe your employer owes you more than what TriNet remits to

3   you.  In fact, we address this in our letter and it includes

4   also overtime.  So any complaint that relates to the specific

5   nature of this particular lawsuit is exempt from the dispute

6   from the arbitration process.

7            THE COURT:  Sorry.  If you can repeat, because I am

8   looking at the contract, the actual provision you just

9   mentioned.

10           MR. DAVIS:  It is Section 3(D).  If you look at TriNet

11  payroll services it is Paragraph 3(D) subsection 3.  "If you

12  believe your employer owes you more than what TriNet remits to

13  you, including payment for time that you have worked or for

14  commissions and bonuses, time that you have taken or accrued

15  sick, vacation time, paid time off, time for any other paid

16  leave or absence or amounts in excess of minimum wage, this

17  will be sole liability of your work site employer, which is PQ

18  and your recourse of collection for such unpaid amounts is

19  against your company and not TriNet," which means that it would

20  be outside of the arbitration procedures and outside of the TCA

21  and therefore it would not be a covered dispute and therefore

22  the DRP would not cover this particular dispute.

23           THE COURT:  I understand what it is saying as between

24  TriNet and the outside employer or that the employee needs to

25  look to PQ not to TriNet.

1          MR. DAVIS:  The DRP covers any dispute arising or
2     relating out of your employment with TriNet but this --
3          THE COURT:  You just read something?
4          MR. DAVIS:  Yes.
5          MS. HASKELL:  Section 9 (A).  The first line.
6          MR. DAVIS:  It says, "The DRP covers any dispute
7     arising out of or relating to your employment with TriNet."
8          THE COURT:  Why couldn't a reading of this be that it
9     is a dispute arising under the employment but they have to look
10     to the actual employer, in other words, look to PQ for any of
11     their damages?
12          MR. DAVIS:  I believe under Section 1 out of the Cole
13     Employment versus Standard Employment it says that TriNet will
14     be your employer of record for administrative purposes only and
15     will process payroll.  Sponsor benefits only.
16          THE COURT:  Let me hear from Mr. Nicholas.
17          MR. NICHOLAS:  Thank you, your Honor.
18          Your Honor, I think it is fairly clear from a total
19     reading of the DRP that it applies in this situation.  There
20     are several references to work site employers in the DRP
21     itself, specifically in Section 9(D) and Section 9(F) of the
22     agreement.  If you read Section 9(D), which addresses the class
23     and collective action waiver, it specifically states, "TriNet
24     and any TriNet customer interested in enforcing this DRP" --
25     here the TriNet customer is Lapan -- "for its own benefit

retains the right to enforce the DRP and class action waiver under the FAA and seek dismissal of class collective or representative actions."  Section 9(D) goes on to state, "TriNet and any TriNet customer" -- again, Lapon -- "interested in enforce this DRP for its own benefit will pay the ash trace and arbitration fees.  When you get to Section 9(F), and this is really the most salient provision, "This DRP is the full and complete agreement relating to arbitration as the means to resolve covered disputes between you and TriNet and between you and your work site employer."

To the extent there are exceptions or carve-outs, they have been enumerated in agreement and they include claims for Workers' Compensation, claims for unemployment compensation.  They do not include any of the enumerated services.  If you look at Section 3 of the agreement, which was referenced by plaintiffs' counsel, the title says TriNet Payroll Services.  It does not say excluded claims.  These not claims that have been carved out of the DRP.  They simply indicate what services TriNet will provide.  And if there is a dispute as to certain payments that should be made to employees on the first level, those employees would go to Lapan for recourse.

I would also point out, your Honor, that there have been two cases that have been filed and have been adjudicated neither of which are in this circuit but both of which come from California, where this DRP was enforced.

1                THE COURT:  The interpretation.

2                MR. NICHOLAS:  Exactly, your Honor.  One addressed

3     specifically whether or not an arbitrator should determine

4     arbitrability.  In that case was -- give me a moment, your

5     Honor -- is *Zelkind v. Flywheel Networks*, Inc., which is 2015

6     Northern District of California decision, which we cited.  Then

7     the most salient case and the one directly on point here, your

8     Honor, is the *Langford v. Hansen Technology* case, which relied

9     on the exact same 9(F) language to determine under those

10    circumstances, which was dealing with discrimination.  The

11    claims against the work site employer were covered by this

12    exact same DRP.  In that case the litigation was moved out and

13    into arbitration.

14               Our position is simple, your Honor.  They don't

15    dispute that their clients executed the DRP.  The DRP is valid

16    and it has enforceable arbitration provisions and this case

17    should be moved to arbitration.

18               THE COURT:  The second issue plaintiffs raised in

19    connection with the DRP is the idea of waiver and that there

20    was another lawsuit involving a DRP where your client didn't

21    seek to enforce.

22               MR. NICHOLAS:  No, your Honor.  There is actually two

23    problems with that argument.  The first is the legal problem

24    with the case they cited.  The second is the fact that TriNet's

25    relationship with Lapan did not commence until October of 2014.

1    The *Mahalick* case was filed against Lapan in February 2014.
2    There was no DRP to rely on at that time.  So the notion that
3    we could have waived our rights here based on the existence of
4    an agreement that wasn't in effect in February 2014 holds no
5    water.
6              Separately, your Honor, the *PPG Industries* case is
7    wholly dissimilar from the case at bar.  Now, that case
8    involved a plaintiff that filed sister lawsuits in
9    Massachusetts and Connecticut against the same defendants.  The
10   courts consolidated the cases.  The parties engaged in
11   discovery, substantial motion practice for several months
12   before the defendants filed an amended answer and
13   counterclaims.  Only then did the plaintiffs file a motion to
14   compel arbitration, and the Courts said, Well, you have been
15   litigating these cases for several months and engaged in
16   discovery.  You cannot now try to force the counterclaims into
17   arbitration.  That is completely different from the case at
18   bar.
19             THE COURT:  Let me hear from Mr. Davis first with
20   regard to the issue of the *Mahalick* case and the timing of
21   that.
22             MR. DAVIS:  Your Honor, we would need discovery on
23   that matter with respect to -- we don't have information on the
24   scope.  We would request discovery on the scope of the DRP.  I
25   should add if the DRP is time limited in that manner, the

1  statute of limitations under New York Labor Law is six years
2  and we have potentially class claims going back six years and
3  we would have a four-year New York Labor Law Rule 23 class that
4  would not fall within DRP.  So there is potentially innumerous
5  years within the statute of limitations period and also within
6  the Rule 23 class that would not be arbitral.
7           THE COURT:  Counsel, say that one more time.  It would
8  not be arbitral because of the statute of limitations is too
9  long?
10          MR. DAVIS:  The statute of limitations under the New
11 York Law is six years.  He is saying the DRP started October of
12 2014 and it is 2016 now.  It would run back six years.
13          THE COURT:  I thought what Mr. Nicholas was saying is
14 that at the time of the *Mahalick* case there wasn't a
15 contractual relationship or at least this contractual
16 relationship with TriNet.
17          Mr. Nicholas, am I correct about that?
18          MR. NICHOLAS:  Yes.  PQ was not using TriNet at the
19 time of the *Mahalick* case.
20          THE COURT:  What is the prejudice that you would point
21 to?  In other words, at this stage as I understand the waiver
22 arguments, there are certain factors taken into account.  Some
23 of it includes the lapsed time from the commencement of the
24 litigation to the request for arbitration, the amount of
25 litigation -- motions and discovery and alike -- and the last

1   is proof of prejudice.  I think the discovery and the motion

2   practice may play into the prejudice, but what is the prejudice

3   to your client?  In other words, what would you point to that

4   would support a waiver in this case?

5            MR. DAVIS:  Well, your Honor, my reading of at least

6   the Second Circuit precedent with respect to this particular

7   aspect of the waiver ruling is that there is a lessened focus

8   on prejudice given the fact that the facts are almost

9   analogous.  In particular, there is sort of a second shot of

10  the apple aspect of this.  They have already had an opportunity

11  to enforce the DRP under almost identical factual circumstances

12  and they did not do it.  Given that fact they shouldn't have

13  the opportunity to have multiple chances to enforce the DRP

14  under almost identical factual circumstances and sort of be

15  able to cherrypick when they use it.

16           Given the fact that in the prior litigation there was

17  a long period of time that passed, there was exchange of

18  document discovery and there was an exchange of written

19  discovery -- I put it in the letter -- and there may have been

20  depositions but I am not entirely sure, interrogatories,

21  written discovery demands, exchange of written discovery and

22  there was also a full settlement brief and written settlement

23  opinions.  There were a number of settlement conferences.  It

24  was litigated for over a year.  There was never any motion to

25  compel arbitration filed.

G7t6kutc

1          In the present litigation we've now been litigating
2 for a number of months.  Given the fact that the defendants
3 have had the opportunity to pursue their right to compel
4 arbitration now and there has been extensive discovery
5 conducted in the prior litigation, time has passed in the
6 present litigation without any opportunity to -- without any
7 testing of the arbitration, we believe there has been some
8 prejudice to the parties.
9          THE COURT:  I would have to see case law.  What is
10 sounds like is you are ingrafting what happened in a prior
11 litigation, in other words, the discovery and motions and other
12 things that happened there.  I understand the lapse of time and
13 alike, but you are ingrafting that has to the prejudice in this
14 case.  I would have to see that, in other words, where in fact
15 a court takes into account -- looks to the prior litigation.
16 My sense would be is what has occurred in this case and why it
17 would be prejudicial in this case.
18          As I understand the status of this case, it is 2016
19 case.  Have there been initial disclosures exchanged?  I did
20 get a joint letter from the parties.  It doesn't seem to me, at
21 least with regard to that aspect of prejudice, that this case
22 is that far down the line.  So I would have to see that case
23 law that would suggest that I could look at the efforts
24 expended in the other case to find prejudice in this case.  We
25 actually have Second Circuit precedent on that.  I will put it

G7t6kutc

1   up for you.  There is Second Circuit precedent to suggest that
2   where the facts are analogous from a prior matter there is
3   waiver.  It's *PPG Industries, Inc. v. Webster Auto Parts*, 28
4   F.3d 103.  It's at Footnote 2.  It is a Second Circuit case
5   from 1997.  If you look at our letter from July 14th, it is the
6   first cited case.
7              THE COURT:  Your letter of July 14th.  What page are
8   you referring to?
9              MR. DAVIS:  It's on the first page.  *PGG Industries,*
10  *Inc. v. Webster Auto Parts*, "Prior litigation of the same legal
11  and factual issues as those the party now wants to arbitrate
12  results in waiver of the right to arbitrate."
13             THE COURT:  That is what the footnote explicitly says?
14             MR. DAVIS:  Yes.  There is a citation to another
15  Second Circuit case and there is internal citations omitted,
16  but I believe the PG Industries case cites to another Second
17  Circuit authority.
18             THE COURT:  Mr. Nicholas.
19             MR. NICHOLAS:  Your Honor, I referenced the PG
20  Industries case in my earlier argument.  I would note several
21  statements from the text of that case, including the following
22  where the court states, "We have often stated that waiver of
23  arbitration is not to be lightly inferred.  A party waives its
24  right to arbitration only when it engages in protracted
25  litigation that prejudices the opposing party."

1          THE COURT: In connection with that when it says for
2    protracted litigation, is there more color that says protracted
3    litigation in the case the Court is being asked to send to
4    arbitration or protracted litigation in the case that the
5    opposing party is pointing to as the product, as to where the
6    waiver had come from?
7          MR. NICHOLAS: It goes on to say, your Honor,
8    "Prejudice as defined by our cases refers to the inherent
9    fairness in terms of delay, expense or damages to a party's
10   legal position that occurs when the party's opponent forces it
11   to litigate an issue and later seeks to arbitrate that same
12   issue." The statements in this decision, your Honor, relate to
13   forcing two parties that have been involved, adverse for one
14   another in the same litigation where one seeks to later
15   arbitrate issues against their opposing party. That case, your
16   Honor, also involves an attempt by the plaintiffs to arbitrate
17   counterclaims that were later filed by the defendants in the
18   underlying case after they had spent months litigating, months
19   of motion practice, and months of discovery. The *Mahalick* case
20   was filed by wholly separate plaintiffs and was settled as to
21   four individuals. There was no class action that was
22   certified. There was no conditional class action that was
23   certified. The named plaintiffs here were not parties to that
24   case. There is no prejudice to these individuals based on the
25   situation that occurred in *Mahalick* over two years ago.

            MR. DAVIS:  Your Honor, it was a class action.  They
were completely analogous claims, entirely the same.
            THE COURT:  For the plaintiffs?
            MR. DAVIS:  The plaintiffs were not you the same, but
it doesn't matter.  It is the case.  There is a direct
citation.  If you look at the second sentence in the paragraph
I just cited, it is the case that it can be separate
litigations.  It is irrelevant the prior litigation occurred as
a part of the separate action or in a different court.
            THE COURT:  I do think, A, that with regard to whether
or not there is arbitration that I need to see the briefing on
that.  I don't think it makes sense in terms of discovery and
the like if the case goes to arbitration.  Discovery and
arbitration could look totally different than discovery that
would happen here.  Again, I am not saying it would go this
way; but if I allow discovery to go forward here while I am
considering the motion to arbitrate and I decide that it should
be arbitrated while some of it -- it seems to me there may be
some discovery that might be unnecessary because the idea
behind the arbitration is that it should streamline the
discovery and make it less expensive for the parties than
litigating.
            During the pendency of the motion, we're going to stay
discovery.  We're going to stay the conditional certification
motion.  Because again if I find that the case shouldn't be

1   before me, it will go to arbitration with regard to those
2   issues.  I think based upon the facts as I understand them now
3   that I can decide the arbitration issue and it is more
4   appropriate that I do so based upon my review of the case law.
5           So with those rulings in mind, how much time, Mr.
6   Nicholas, do you need on your opening brief?
7           MR. NICHOLAS:  I can file that by Wednesday of next
8   week.
9           MR. DAVIS:  That's fine.  Your Honor, with respect to
10  the FLSA motion, though, the case law is pretty clear that in
11  between the period when the parties are briefing the motion,
12  the FLSA statute of limitations should be tolled.  We're happy
13  to file a letter motion requesting tolling from the Court.
14          THE COURT:  You probably have not, but I will ask have
15  you had a discussion with Mr. Nicholas about that issue?
16          MR. DAVIS:  No, your Honor.
17          MR. NICHOLAS:  No, your Honor.
18          MR. DAVIS:  I have not, but we anticipate filing a
19  motion for equitable tolling.  In the interim I will broach
20  that topic with counsel.
21          THE COURT:  Why don't you do that.  You may be able to
22  work it out.  If not, submit a letter.
23          Mr. Nicholas has indicated that he will be able to get
24  me a brief by Wednesday of next week.  How much time do you
25  need for your opposition?

MR. DAVIS: It's a small firm.

THE COURT: Give me a realistic date and then I will hear from Mr. Nicholas if he has an objection. You wanted to go forward with discovery. Discovery is not going to go forward.

MR. NICHOLAS: Take all the time you need.

THE COURT: That's what I thought.

MR. DAVIS: I am looking to my associate.

MS. HASKELL: If we can have until the 8th.

THE COURT: 8th of?

MS. HASKELL: September.

THE COURT: Mr. Nicholas, two weeks on reply?

MR. NICHOLAS: Two weeks is fine, your Honor.

THE COURT: 8th of September.

MS. HASKELL: Thank you.

THE LAW CLERK: 22nd would be the reply.

THE COURT: Once I see the briefs, I will let the parties know whether I think oral argument is something that is necessary. If I do have oral argument, I will endeavor to the extent I have time to put in an order the questions I have or the issues that I would like to discuss with the parties. If you don't hear from me, it means that I don't think I need oral argument.

MR. NICHOLAS: Thank you, your Honor.

THE COURT: Anything else we need to deal with, Mr.

```
     G7t6kutc
1    Davis?
2              MR. DAVIS:  No, your Honor.
3              THE COURT:  Mr. Nicholas?
4              MR. NICHOLAS:  No, your Honor.
5              THE COURT:  Thank you very much for coming in.  I look
6    forward to getting your papers.
7                                 o0o
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```