**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CUNEYT KUTLUCA and TANIQUA
BROWN, Individually and on behalf of all
others similarly situated,

      Plaintiffs,

          v.

PQ NEW YORK, INC., PQ OPERATIONS,
INC., PQ LICENSING S.A., PQ 933
BROADWAY, INC., PQ CENTRAL PARK
INC., and DOES 1-51,

      Defendants.

Case No. 1:16-cv-03070-VSB

---

**SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF**
**MOTION TO COMPEL ARBITRATION AND DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

FOLEY & LARDNER LLP
Anne B. Sekel
90 Park Avenue
New York, NY 10016
212-682-7474
asekel@foley.com

Erin C. Horton
James M. Nicholas
Donald W. Schroeder
111 Huntington Avenue
Boston, MA 02199
617-342-4000
ehorton@foley.com
jnicholas@foley.com
dschroeder@foley.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

I.     PLAINTIFFS JOSE MARTINEZ AND RYAN CUMMINGS ARE BOUND BY TRINET'S TERMS AND CONDITIONS AGREEMENT, INCLUDING THE DISPUTE RESOLUTION PROTOCOL. .................................................................. 1

     A.    The TCA Unambiguously Requires Arbitration of Employment-Related Wage and Hour Disputes with PQ on an Individual Basis. ..................................... 1

     B.    Plaintiffs Martinez and Cummings, Like All Other Named Plaintiffs, Assented to Mandatory Arbitration of Their Claims under the DRP. ................... 3

     C.    Plaintiffs Martinez and Cummings, Like All Other Named Plaintiffs, Offer No Cognizable Defense to the Formation of the DRP. ................................ 3

II.    THE REVISED TERMS AND CONDITIONS AGREEMENT, INCLUDING THE DISPUTE RESOLUTION PROTOCOL, APPLIES RETROACTIVELY AND COVERS ALL CLAIMS BEFORE THIS COURT. ................................................. 7

     A.    The Asserted Claims Are Covered by the Revised DRP, Whether They Pre- or Post-Date the Revised DRP's Acceptance................................................. 8

     B.    In Addition to the Revised DRP's Retroactive Effect, the SOI Agreement Also Creates Binding Obligations to Arbitrate Claims That Pre-Date the Revised DRP.................................................................................. 14

III.   BIFURCATING THE CLASS INTO PRE-REVISED DRP AND POST-REVISED DRP SUBCLASSES IS FUTILE BECAUSE THE REVISED DRP APPLIES RETROACTIVELY........................................................................................ 15

CONCLUSION……………………………………………………………………...............16

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*5381 Partners, LLC v. Shareasale.com, Inc.*,
   No. 12-CV-4263 (JFB) (AKT), 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013) ......................5

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012)...................................................................................................15

*Amer. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) .........................................................................................................3

*Scherillo v. Dun & Bradstreet, Inc.*,
   684 F. Supp. 2d 313 (E.D.N.Y. 2010) ..................................................................................5

*Application of Whitehaven S.F., LLC v. Spangler*,
   45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) .........................................................................3

*Arrigo v. Blue Fish Commodities, Inc.*,
   408 Fed. Appx. 480 (2d Cir. 2011)..............................................................................10, 12

*Chan v. Chinese-American Planning Council*,
   180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016).........................................................................10

*Chelsea Sq. Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*,
   189 F.3d 289 (2d Cir. 1999).................................................................................................4

*Clark v. Kidder, Peabody & Co.*,
   636 F. Supp. 195 (S.D.N.Y. 1986) .....................................................................................10

*Coenen v. R.W. Pressprich & Co.*,
   453 F.2d 1209 (2d Cir. 1979).......................................................................................10, 13

*Coyne v. Strategic Business Partners, LLC*,
   Case No. 09 C 758, 2011 WL 892652 (N.D. Il. Mar. 14, 2011) .......................................14, 15

*Faroque v. Park West Exec. Servs.*,
   No. 15 CV 6868 (DLI), 2016 U.S. Dist. LEXIS 121877 (E.D.N.Y. Sept. 7,
   2016) ....................................................................................................................................11

*Faroque v. Park West Exec. Servs.*,
   No. 15-CV-6868 (DLI) (CLP), 2017 WL 1214482 (E.D.N.Y. Mar. 31, 2017) ...........9, 10, 11

*Flemings v. J.Crew*,
   No. 1:16-cv-2663-GHW, 2016 WL 6208570 (S.D.N.Y. Oct. 21, 2016)..................................4

ii

*Gold v. Deutsche Aktiengesellschaft*,
    365 F.3d 144 (2d Cir. 2004)........................................................................................4, 6

*Holick v. Cellular Sales of New York, LLC*,
    802 F.3d 391 (2d Cir. 2015)........................................................................................9, 12

*LaVoice v. UBS Fin'l Servs., Inc.*,
    11 Civ. 2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ...............................15

*Lucente v. Int'l Bus. Machs. Corp.*,
    310 F.3d 243 (2d Cir. 2002)........................................................................................16

*Marciano v. DCH Auto Group*,
    14 F. Supp. 3d 322, 330 ...............................................................................................4

*Patterson v. Raymours Furniture Co.*,
    96 F. Supp. 3d 71 (S.D.N.Y. 2015) ...............................................................................15

*Patterson v. Somerset Investors Corp.*,
    946 N.Y.S. 2d 217 (App. Div. 2012) ...............................................................................5

*Raniere v. CitiGroup, Inc.*,
    533 Fed. Appx. 11 (2d Cir. 2013)..................................................................................15

*Schapp v. MasTec Servs. Co.*,
    No. 6:12-CV-0841, 2014 WL 1311937 (N.D.N.Y. Mar. 31, 2014) ........................................9

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*,
    198 F.3d 88 (2d Cir. 1999)............................................................................................8

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013)........................................................................................15

*Valle v. ATM Nat'l, LLC*,
    14-cv-7993 (KBF), 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015)...........................................10

*Williams v. Joseph Dillon & Co.*,
    663 N.Y.S. 2d 126 (1997)............................................................................................10

*Worldcrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997)............................................................................................8

*Zaltz v. JDate*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) ..............................................................................7

Defendants PQ New York, Inc., PQ Operations, Inc., PQ 933 Broadway, Inc., PQ Central Park, Inc., and PQ Licensing S.A. (collectively, "PQ" or "Defendants") respectfully submit this supplemental memorandum ("Memorandum") in further support of their Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint (the "Motion to Compel"). Per the Court's March 7, 2017 Order, this Memorandum addresses the addition of new opt-in Plaintiffs Jose C. Martinez and Ryan Cummings and constitutes the final briefing on the Motion to Compel. As with all other named Plaintiffs in this matter, Martinez and Cummings signed and are bound by the terms of the TriNet Terms and Conditions Agreement ("TCA"), containing a Dispute Resolution Protocol ("DRP"), which mandates that all of their claims against PQ be resolved exclusively on an individual basis through binding arbitration.

## I.     PLAINTIFFS JOSE MARTINEZ AND RYAN CUMMINGS ARE BOUND BY TRINET'S TERMS AND CONDITIONS AGREEMENT, INCLUDING THE DISPUTE RESOLUTION PROTOCOL.

### A.     The TCA Unambiguously Requires Arbitration of Employment-Related Wage and Hour Disputes with PQ on an Individual Basis.

From the outset, the TCA provides unambiguous and ample notice of its terms concerning the mandatory arbitration of employment-related, including wage-related, disputes. In bold, all capitalized font, the TCA begins by stating, "**PLEASE READ THIS TCA CAREFULLY. IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET OR A TRINET CUSTOMER [*i.e.*, PQ], AND RELATED MATTERS.**" (Second Supplemental Declaration of Grant Folsom ("Folsom SSD"), Exs. C and D at Introductory Paragraph) (emphasis in original).

Section 9 of the TCA sets forth a "Dispute Resolution Protocol," or "DRP," which calls for mandatory arbitration of all "covered disputes." (Folsom SSD, Exs. C and D at § 9(a)). By

the DRP's terms, a "covered dispute" includes any dispute "arising out of or relating to your employment with your company [*i.e.*, PQ]. . . ." (*Id.*)  The DRP lists a number of limited exceptions to this mandatory arbitration requirement, stating in all bold font, "**With only the exceptions described below [*e.g.*, claims for workers compensation, state disability insurance, unemployment insurance benefits], arbitration will replace going before a government agency or a court for a judge or jury trial . . . .**" (*Id.*) (emphasis in original). Wage and hour claims are not among the enumerated exceptions and are, therefore, "covered disputes" subject to mandatory arbitration.  For the avoidance of doubt, Section 9(f) of the DRP states, "[T]his DRP is the full and complete agreement for resolution of covered disputes between you and . . . your company (and its employees, officers and agents)."  (Folsom SSD, Exs. C and D at § 9(f)).  Without question, the DRP requires the arbitration of any disputes with PQ concerning the payment of wages.

The DRP also contains a waiver of the right to file or participate in a class or collective action (the "Class Action Waiver").  Specifically, it provides in all bold text, "**There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general proceeding, including, without limitation, uncertified class actions; provided, however, that you may opt out of the Class Action Waiver by clicking this box [ ] before you click below to acknowledge this TCA.**" (Folsom SSD, Exs. C and D at § 9(d)).

Finally, Section 10 of the TCA, entitled "Acknowledgment," clearly explains how employees can accept the terms of the TCA, including the DRP and what such acceptance means.  Specifically, Section 10 states that "[b]y acknowledging below, I confirm that I have

read and understand the contents of this TCA (including, but not limited to, the DRP) . . . and that I agree to abide by the terms and conditions set forth above in this TCA, including but not limited to the DRP . . . ."  (Folsom SSD, Exs. C and D at § 10).

      **B.**      **Plaintiffs Martinez and Cummings, Like All Other Named Plaintiffs, Assented to Mandatory Arbitration of Their Claims under the DRP.**

On January 18, 2016 at 9:07 P.M., Martinez entered TriNet Passport and acknowledged and accepted the terms of the TCA, including the above-quoted DRP and Class Action Waiver, by clicking the "I Accept" button.  (Folsom SSD, ¶¶ 8, 14).  Likewise, on April 21, 2016 at 9:30 A.M., Cummings entered TriNet Passport and clicked the "I Accept" button to acknowledge and accept the terms of the TCA.  (Folsom SSD, ¶¶ 9, 15).  Neither Martinez nor Cummings opted out of the Class Action Waiver by clicking on the box provided.  (Folsom SSD, ¶ 13).  In so doing, Martinez and Cummings unequivocally agreed to pursue their claims against PQ on an individual basis and in binding arbitration, not before this Court.[1]

      **C.**      **Plaintiffs Martinez and Cummings, Like All Other Named Plaintiffs, Offer No Cognizable Defense to the Formation of the DRP.**

Plaintiffs have not met their burden to identify a valid basis for concluding that their – or any other Plaintiffs' – assent to the DRP was inadequate or that the agreement is invalid.  *See Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) (internal quotations omitted) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the

---

[1]      Plaintiffs argue in their final briefing to the Court that "Cummings' situation presents the threat of unappealable lost claims."  This is simply untrue.  Cummings, and indeed all Plaintiffs in this matter, retain the right to pursue any claims they may have arising from their employment with PQ and to have those claims fully adjudicated by an arbitrator.  The DRP does not include any waiver of claims.  It merely sets forth the manner in which such claims may be brought and limits the action to each individual Plaintiff and PQ.  *See Amer. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311 (2013) (explaining "class action waiver merely limits arbitration to the two contracting parties").

arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense.").  Martinez has not submitted any evidence to the Court in opposition to the Motion to Compel, and has made no allegations concerning the circumstances surrounding his acceptance of the TCA.  Cummings, for his part, maintains that he clicked "I Accept" during a PQ orientation because he "assumed . . . that TriNet was simply a payroll vendor, and that when [he] was being urged to click 'accept,' it was for the sake of accepting terms and conditions of payroll administration and use of the TriNet payroll and benefits web portal."  (Affidavit of Plaintiff Ryan Cummings ("Cummings Aff."), ¶ 16).  He further alleges, "No one ever advised me or the other employees who were present at the orientation that the document we were 'accepting' contained either an arbitration agreement or a class action waiver, nor did I ever see such language while I was going through the sign-up process." (Cummings Aff., ¶ 18).

As the Second Circuit has held, however, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . ." *Flemings v. J.Crew*, No. 1:16-cv-2663-GHW, 2016 WL 6208570, at *3 (S.D.N.Y. Oct. 21, 2016) (internal quotations omitted) (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)).  Thus, even if Cummings did not understand, as he alleges, whether the agreement contained an arbitration provision or class action waiver, whether he could opt out, or the implications of entering into the DRP, "the burden was upon [him] to have his concerns addressed before signing" it.  *Id; see also Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 330, n.3 (S.D.N.Y. 2014) (citing *Chelsea Sq. Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 293, 297 (2d Cir. 1999)) (noting Second Circuit's rejection of argument that parties should not be bound

by clauses printed on the reverse side of documents or on pages not presented to the parties); *Patterson v. Somerset Investors Corp.*, 946 N.Y.S. 2d 217, 218 (App. Div. 2012) (reasoning "a party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms").  New York courts, moreover, have consistently found that agreements like the TCA, which require users to scroll through the document to see the remainder of its content, provide users with sufficient notice of their content and the effect of clicking a button to indicate acceptance.  *See, e.g., 5381 Partners, LLC v. Shareasale.com, Inc.,* No. 12-CV-4263 (JFB) (AKT), 2013 WL 5328324, at *7-8 (E.D.N.Y. Sept. 23, 2013), *and Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 322 (E.D.N.Y. 2010).

In fact, during the April 21, 2016 PQ orientation at which Cummings accepted the TCA, he had ample opportunity to ask any questions he may have had about the TCA and its various terms and to review the document in its entirety.  During Cummings' orientation, as with all PQ orientation sessions, the presenter frequently paused the orientation program and opened up the floor to any questions participants may have had.  (Declaration of Rosa Berrios ("Berrios Decl."), ¶¶ 17-19).  Cummings could have, but did not, ask any questions about the TCA, its content or effects.  (Berrios Decl., ¶ 19).  Furthermore, without even scrolling through the TCA, as reflected on the screenshots provided to this Court [Dkt. Nos. 90-5, 90-6], the Introductory Paragraph, Table of Contents, and Section 10 ("Acknowledgement") were presented to Cummings on his iPhone as well as on a large screen at the front of the orientation classroom. (First Supplemental Declaration of Grant Folsom ("Folsom FSD"), ¶¶ 22-23, Ex. E; Berrios Decl., ¶¶ 15-16).  Had Cummings even briefly glanced at his iPhone or the large screen in front of him during his orientation, he would have seen that the document he was "accepting" contained specific information concerning how disputes between him and PQ would be resolved.

First, the top of the screen on Cummings' iPhone and at the front of the classroom read in all capitalized, bold font, "**PLEASE READ THIS TCA CAREFULLY. . . IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET OR A TRINET CUSTOMER**."  (Folsom FSD, Ex. E) (emphasis in original).  Below that language, still visible without scrolling or clicking on the iPhone screen and large screen at the front of the orientation classroom was the Table of Contents, which listed nine items, including "Dispute Resolution Protocol ("DRP")."   (*Id.*)   Finally, near the bottom of the screen, still visible without any scrolling or clicking, Section 10, the "Acknowledgement," stated, "By acknowledging below, I confirm that I have read and understand the contents of this TCA (including, but not limited to, the DRP) . . . and that I agree to abide by the terms and conditions set forth above in the TCA, including but not limited to the DRP."  (*Id.*)  Below all of this conspicuous and clearly binding language, which repeatedly references dispute resolution, appeared the field for Cummings to enter a valid email address and click "I Accept."   (*Id.*)  Nothing was hidden.   To access the remainder of the document, Cummings need only scroll through the document in a single embedded window.  (Declaration of Grant Folsom ("Folsom Decl."), ¶¶ 7-11).  If he had trouble doing so, he could have asked the orientation presenter or facilitator for assistance and it would have been provided to him.  (Berrios Decl., ¶¶ 17-19).  Cummings chose not to scroll through the TCA and not to ask questions despite his alleged deep concern about retaining the right to engage in class or collective action.   Under well-established Second Circuit precedent, he is bound by the consequences of his own actions and inactions in accepting an agreement which he chose not to read carefully or at all.  *See Gold*, 365 F.3d at 149.

In short, Plaintiffs cannot rely on any assertion contained in Cummings' affidavit to establish any cognizable defense to the formation of a binding contract to arbitrate. As with each of the other named Plaintiffs in this matter, by clicking "I Accept," Cummings committed to raising any claims related to his employment with PQ solely on an individual basis and in binding arbitration.[2]

## II. THE REVISED TERMS AND CONDITIONS AGREEMENT, INCLUDING THE DISPUTE RESOLUTION PROTOCOL, APPLIES RETROACTIVELY AND COVERS ALL CLAIMS BEFORE THIS COURT.

Martinez and Cummings both accepted a version of the TCA that included what has previously been referred to in earlier filings as the "Revised DRP." Plaintiffs Taniqua Brown and Angelica George also accepted a version of the TCA containing the Revised DRP. All of the named Plaintiffs are alleged to have claims that pre-date their acceptance of the Revised DRP, with the exception of Kutluca. Kutluca accepted his DRP at the commencement of his employment with PQ, and, therefore, the retroactivity of his DRP is of no import. (Declaration of Michael Belloise ("Belloise Decl."), ¶ 6). In light of the foregoing, for purposes of analyzing the retroactive effect of the DRP, the "Revised DRP" is the applicable document.

---

[2]     Several other Plaintiffs have previously attempted to challenge the TCA's formation. Plaintiffs Cuneyt Kutluca and Taniqua Brown claimed that they did not recall reading the TCA or clicking "I Accept." (Kutluca Aff., ¶¶ 7-8; Brown Aff., ¶¶ 11-12). The law is clear, however, that failing memories do not absolve Plaintiffs of their contractually binding obligations. *See Zaltz v. JDate*, 952 F. Supp. 2d 439, 451-52 (E.D.N.Y. 2013); *see also* Defendants' Reply Memorandum in Further Support of Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint, Dkt. No. 76, at 1-2 (responding to Kutluca's and Brown's purported lack of recollection concerning the TCA). Another Plaintiff, Angelica George, alleged that she was pulled off the floor during a shift and pressured to sign the TCA while customers waited for her to assist them. (George Aff., ¶¶ 4, 9). In fact, George acknowledged the TCA nearly an hour after her shift had ended. (First Supplemental Declaration of Timothy M. Gordon ("Gordon FSD"), ¶¶ 7-8, Ex. B; Folsom FSD, ¶¶ 10-13, Exs. B, C). *See also* Defendants' Sur-Surreply Memorandum in Further Support of Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint, Dkt. No. 89, at 1 (responding to George's allegations that she was pressured to sign the TCA during a shift). Cummings' allegations that no one at PQ walked him through the details of the TCA similarly fail to invalidate the agreement he knowingly signed by clicking "I Accept."

Given the volume of briefing related to the Motion to Compel and Plaintiffs' related

Motion for Leave to File an Amended Complaint (the "Motion to Amend"), before engaging in

further analysis of the Revised DRP and its retroactive effect, a summary of all named Plaintiffs

and the arbitration agreements they signed, with corresponding docket numbers, is included

hereafter to assist the Court:[3]

|  | SOI Agreement[4] | DRP | Revised DRP |
|---|---|---|---|
| **Kutluca** |  | Dkt. No. 55-2 |  |
| **Brown** |  | Dkt. No. 55-3 | Dkt. No. 71-4 |
| **George** | Dkt. No. 91-1 | Dkt. No. 90-3 | Dkt. No. 90-4 |
| **Martinez** |  |  | Filed herewith |
| **Cummings** |  |  | Filed herewith |

### A.    The Asserted Claims Are Covered by the Revised DRP, Whether They Pre- or Post-Date the Revised DRP's Acceptance.

"[I]n light of the strong federal policy in favor of arbitration, the existence of a broad

agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be

said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that

covers the asserted dispute."   *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration

Int'l*, 198 F.3d 88, 99 (2d Cir. 1999) (citing *Worldcrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d

Cir. 1997)) (internal quotations omitted) (emphasis added).   Doubts should be resolved in favor

of coverage.   *Id.*   "A 'positive assurance' as to the applicability of an arbitration clause can be

---

[3]       PQ reserves all rights to submit into evidence additional signed arbitration agreements for the named Plaintiffs which may hereafter be discovered.  The chart provided to the Court in this Memorandum includes all documents discovered to date.

[4]       As set forth in prior briefing on the Motion to Compel and Motion to Amend, the SOI Agreement is the standard arbitration agreement used by PQ's former professional employer organization, Strategic Outsourcing, Inc. (the "SOI Agreement").  PQ has identified just one signed SOI Agreement, from George.  It is likely that other named Plaintiffs also signed an SOI Agreement.  However, to date, no other SOI Agreements for the named Plaintiffs have been located in PQ's records.

found by looking to the 'contract's language, the timing of its execution, and the conduct of the parties.'" *Faroque v. Park West Exec. Servs.*, No. 15-CV-6868 (DLI) (CLP), 2017 WL 1214482, at *3, n.3 (E.D.N.Y.  Mar. 31, 2017) (quoting *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 398 (2d Cir. 2015)).   Nothing in the Revised DRP's broad agreement to arbitrate provides any positive assurance that its scope is merely prospective.

i.    The Plain Language of the Revised DRP Mandates Retroactive Application of its Terms.

In their final briefing, Plaintiffs have misrepresented to the Court the language of the Revised DRP.  The Revised DRP, which Plaintiffs Brown, George, Martinez and Cummings accepted, expressly states that it applies to disputes arising out of or relating to each of their employment with PQ.  Section 9(a) of the Revised DRP unequivocally states, "this DRP covers any dispute arising out of or relating to your employment with TriNet and/or, if you work for one of TriNet's customers, arising out of or relating to your employment with your company, as well as any dispute with a benefit plan, insurer, employee, officer, or director of TriNet or of a TriNet customer (all of whom, in addition to TriNet customers, are intended to be beneficiaries of this DRP ('covered disputes')."  (Declaration of Christopher Q. Davis ("Davis Decl."), Ex. 4 at § 9(a); Folsom FSD, Ex. D at § 9(a); Folsom SSD, Exs. C and D at § 9(a)).  Section 9(f) reiterates, "this DRP is the full and complete agreement for resolution of covered disputes . . . between you and your company."  (*Id.* at § 9(f)).  Accordingly, the Revised DRP, by its own clear terms, applies to any disputes relating to or arising out of employment with PQ, as TriNet's customer, both pre- and post-DRP acceptance.

"[I]n the absence of language explicitly limiting an otherwise broad arbitration agreement to post-agreement disputes, the agreement should be deemed retroactive."  *Schapp v. MasTec Servs. Co.,*  No. 6:12-CV-0841 (LEK/DEP), 2014 WL 1311937, at *3-4 (N.D.N.Y. Mar. 31,

2014) (citing *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir. 1979)) (applying arbitration policy retroactively where policy applied broadly to "any dispute arising out of or relating to [Plaintiffs'] employment" and contained no temporally limiting language).  Resolving any doubts concerning the scope of arbitrable issues in favor of arbitration, and in the absence of any language limiting arbitration to post-agreement disputes, New York federal and state courts regularly compel arbitration of claims that pre-date the arbitration agreements at issue.  *Chan v. Chinese-American Planning Council*, 180 F. Supp. 3d 236, 241 (S.D.N.Y. 2016) (compelling arbitration of pre-agreement disputes because arbitration provision contained no clear limiting language and "to the extent there is doubt about the scope of arbitrable issues, the Court must resolve that doubt in favor of arbitration"); *Valle v. ATM Nat'l, LLC*, 14-cv-7993 (KBF), 2015 WL 413449, at *5 (S.D.N.Y. Jan. 30, 2015) (retroactively applying arbitration clause without express limitation to "future disputes"); *Arrigo v. Blue Fish Commodities, Inc.*, 408 Fed. Appx. 480, 481-82 (2d Cir. 2011) (where plaintiff signed arbitration agreement three months into employment, compelling arbitration of unpaid overtime claims that accrued pre-agreement); *Clark v. Kidder, Peabody & Co.*, 636 F. Supp. 195, 197 (S.D.N.Y. 1986) (holding arbitration agreement executed in connection with restructuring of investor account required arbitration of disputes that arose pre-restructuring); *Williams v. Joseph Dillon & Co.*, 663 N.Y.S. 2d 126, 127 (1997) (compelling arbitration of claims related to transactions pre-dating arbitration agreement).

Plaintiffs cite one new decision, *Faroque v. Park West Executive Services*, but their reliance on this case is misplaced.  In *Faroque*, the plaintiffs were parties to a series of independent contractor agreements, the most recent of which stated, in part, "[a]ll claims and disputes arising under or relating to this Agreement . . . are to be settled by individual binding arbitration in the state of New York, County of Queens."  *Faroque*, 2017 WL 1214482, at *3.

The agreements that predated the arbitration agreement at issue in *Faroque*, however, did not require arbitration of claims.  Instead, they explicitly provided for dispute resolution of any claims arising under "this Agreement" in the appropriate state or federal court for the County of Queens, New York.  *See Faroque v. Park West Exec. Servs.*, No. 15 CV 6868 (DLI), 2016 U.S. Dist. LEXIS 121877, at *20-21 (E.D.N.Y. Sept. 7, 2016) (reciting facts).  As to the retroactive effect of the most recent independent contractor agreement, which contained an arbitration clause, the *Faroque* court reasoned:

> Here, the language of the 2015 Agreement speaks only to "this Agreement."  Looking to the jurisprudence from courts of concurrent jurisdiction, as a matter of contract interpretation, when successive contracts use the phrase "this Agreement," "[t]he subject matter of [the] clause is restricted by the phrase 'this Agreement.'"  Accordingly, the Court does not find the Arbitration Clause to have any ambiguity that would necessitate further analysis.

*Faroque*, 2017 WL 1214482, at *3 (internal citations omitted).  In short, the *Faroque* court's analysis turned entirely on the impact and significance of the limiting phrase "this Agreement" in the arbitration clause at issue.

The Revised DRP does not follow on the heels of one or more agreements providing for dispute resolution in any court of law, and its scope, more importantly, is ***not*** limited to "this Agreement."  Instead, the Revised DRP encompasses "any dispute . . . arising out of or relating to your employment with your company.  (Davis Decl., Ex. 4 at § 9(a); Folsom FSD, Ex. D at § 9(a); Folsom SSD, Exs. C and D at § 9(a)).  As such, its applicability may extend to claims that relate to Plaintiffs' employment with PQ at any times that pre-date their acceptance of the Revised DRP.

11

ii.     The Conduct Of The Parties Does Not Conflict With Retroactive Application of the Revised DRP, Per its Terms.

In the face of the Revised DRP's plain language encompassing claims relating to employment with PQ *at any time*, Plaintiffs resort to an argument that the parties' conduct evinces their intent that the Revised DRP apply only prospectively.  Plaintiffs' position lacks any support in fact or law, however, and cannot allow Plaintiffs to avoid their contractually binding obligations to submit their claims to arbitration on an individual basis.

The *Holick* case, in which the court looked to the parties' conduct to find positive assurance that an arbitration agreement had no retroactive effect, is inapposite.  *See, generally, Holick*, 802 F.3d 391.  In *Holick*, the plaintiffs were classified as independent contractors, not subject to any binding arbitration agreements.  When the plaintiffs were later reclassified as at-will employees, they signed employment agreements containing arbitration clauses.  *Id.* at 398.  Thereafter, the plaintiffs were treated differently by the defendant in several ways, including being paid direct commissions and having federal taxes withheld from their pay.  *Id.* at 395.  The *Holick* court held that the arbitration clauses in the employment agreements did not apply retroactively because "[i]t would be inconsistent with the parties' conduct to construe the [arbitration] [a]greement, which referenced 'employment,' to apply to a period when the parties themselves did not contemplate such a relationship."  *Id.* at 398.

Here, unlike in *Holick*, Brown, George, Martinez, and Cummings each were already PQ employees when they accepted the Revised DRP, which clearly applies to all claims relating to or arising from their employment with PQ.  *See Arrigo*, 408 Fed. Appx. at 481-82 (holding arbitration agreement entered during ongoing employment applied retroactively).  Indeed, the case at bar is fundamentally different than *Holick*, which addressed two wholly incompatible relationships (Form 1099 independent contractor versus Form W-2 employee) and the competing

12

contracts that separately governed each of these distinct relationships.  Conversely, the Plaintiffs

in this case are and have always been "employees" of PQ, and that very specific relationship has

never been altered.

Setting that aside, even if, as Plaintiffs suggest, Cummings – or any other Plaintiff for

that matter – could not have contemplated employment with TriNet before his employment with

TriNet began, surely he and the other named Plaintiffs contemplated and understood their present

and ongoing employment with PQ.[5]  *See Coenen*,  453 F.2d at 1210-12 (where New York Stock

Exchange ("NYSE") Constitution required arbitration of "any controversy between members,"

requiring arbitration of dispute which arose before plaintiff was a NYSE member, because, when

plaintiff joined the NYSE, he knew Pressprich was a member and his claim against Pressprich

had already arisen).

The Revised DRP's text and controlling case law both support application of the Revised

DRP's mandatory arbitration terms and Class Action Waiver to ***all*** claims arising during the

---

[5]     Moreover, the relationship between Plaintiffs and TriNet was established well before they signed the Revised DRP through a corporate transaction whereby PQ's former PEO, Strategic Outsourcing, Inc. ("SOI"), merged into TriNet.  Following the transaction in October 2012, SOI was a wholly-owned subsidiary of TriNet. (Declaration of Greg Kerber ("Kerber Decl."), ¶ 3).  In December 2014, PQ entered into a new customer service agreement with TriNet, pursuant to which TriNet would provide PEO services to PQ using TriNet's Passport platform instead of TriNet subsidiary SOI's platform.  (Declaration of Timothy M. Gordon, ¶ 2).  Section 1 of the Revised DRP explains as follows:

> The TriNet family of companies is engaged in the business of providing human resources services through various licensed professional employer organizations ("PEOs").  In this TCA, "TriNet" includes any and all of the TriNet companies (i.e., TriNet Group, Inc., all companies owned by TriNet Group, Inc. [e.g., TriNet HR Corporation], subsidiaries of companies owned by TriNet Group, Inc., subsidiaries of those subsidiaries, and all other companies under the TriNet Group, Inc. umbrella), whether doing business in their own name or otherwise.

(Davis Decl., Ex. 4 at § 1; Folsom FSD, Ex. D at § 1; Folsom SSD, Exs. C and D at § 1).  Simply put, Plaintiffs' employment status with TriNet and with PQ did not materially change with their acceptance of the Revised DRP. What changed was the platform through which their payroll and benefits were administered.  They continued to be co-employed by a PEO provider within the TriNet "family."  (*See* Kerber Decl., ¶ 3).

employment of Brown, George, Martinez, and Cummings with PQ.[6]   No positive assurance of any kind supports Plaintiffs' purely prospective application of the Revised DRP's terms.

     **B.**    **In Addition to the Revised DRP's Retroactive Effect, the SOI Agreement Also Creates Binding Obligations to Arbitrate Claims That Pre-Date the Revised DRP.**

In their final brief, Plaintiffs attempt to challenge the SOI Agreement on several grounds. Their arguments, however, are of little import to this Court's analysis in light of the Revised DRP's clear retroactive effect.  All but one named Plaintiff signed the Revised DRP, which, by its own express terms, applies to all claims arising from or relating to employment with PQ at any time.  The only Plaintiff who did not sign the Revised DRP, signed an earlier version of the DRP at the commencement of his employment with PQ and, therefore, has no claims that pre-date his arbitration agreement and class action waiver.  Simply stated, the Court need not consider the SOI Agreement at all in order to hold that all of Plaintiffs' claims must be pursued, if at all, individually and before an arbitrator.

That said, Plaintiffs' challenges to the SOI Agreement, nevertheless, fall flat.  Plaintiffs claim that the SOI Agreement has been found unenforceable.   However, the only case Plaintiffs cite is *Coyne v. Strategic Business Partners, LLC*, Case No. 09 C 758, 2011 WL 892652 (N.D. Il. Mar. 14, 2011), which was decided under Illinois state law and which did not apply the third party beneficiary or equitable estoppel analyses that are regularly employed under New York law to determine whether the non-signatory defendant employer could avail itself of the agreement's arbitration provisions.  *Id.* at *5 (discussing in dicta only the application of agency principles to

---

[6]     Kutluca is the only named Plaintiff without any claims that pre-date his execution of the DRP.  The validity and enforceability of Kutluca's DRP has been fully briefed for the Court in PQ's <u>Memorandum of Law in Support of Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint</u> [Dkt. No. 53] and <u>Reply Memorandum in Further Support of Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint</u> [Dkt. No. 76].

allow a non-signatory to enforce an arbitration agreement).  Moreover, unlike Plaintiffs here, the plaintiffs in *Coyne* were also parties to separate employment agreements whereby they agreed to submit all disputes to the jurisdiction of the Illinois courts and their employment agreements could not be modified except by a signed written agreement.  *Id.* at *2.  The named Plaintiffs in this matter have no conflicting agreements – and, indeed, no other agreements of any kind – concerning the resolution of disputes arising from or relating to their employment with PQ.

Without citing any case law to support their positions, Plaintiffs make two other arguments.  Plaintiffs contend that the SOI Agreement is "self-repudiating" and, therefore, ceased to require arbitration of claims against PQ after the relationship between PQ and SOI ended.  Plaintiffs claim that SOI's obligations to arbitrate disputes cannot survive the termination of the underlying agreement.  This makes no sense, however, as the majority of employment-related disputes are pursued only after the underlying employment relationship is terminated.

Plaintiffs also reiterate their argument that the lack of an opt-out mechanism in the SOI Agreement renders its class action waiver unenforceable.  The law of this Circuit unequivocally allows for enforcement of class action waivers in the absence of opt-out mechanisms.  *See, e.g.*, *Raniere v. CitiGroup, Inc.*, 533 Fed. Appx. 11 (2d Cir. 2013); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71 (S.D.N.Y. 2015); *LaVoice v. UBS Fin'l Servs., Inc.*, 11 Civ. 2308 (BSJ) (JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012).

## III.   BIFURCATING THE CLASS INTO PRE-REVISED DRP AND POST-REVISED DRP SUBCLASSES IS FUTILE BECAUSE THE REVISED DRP APPLIES RETROACTIVELY.

Although "a court should freely give leave to amend the complaint when justice so requires, . . . a request to replead should be denied in the event that amendment would be futile." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (internal

quotations and citations omitted).  "An amendment . . . is futile if the proposed claim could not withstand a motion to dismiss . . . ."  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Before this Court is a Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint.  In deciding whether to dismiss Plaintiffs' Class Action Complaint, the Court will consider whether the Revised DRP applies retroactively.  If, indeed, the Revised DRP does apply retroactively, then the Motion to Amend to bifurcate the putative class into pre- and post-DRP claims is futile.[7]

For each of the reasons set forth in Part II.A above, the Revised DRP applies retroactively to any claims that Plaintiffs may have which pre-date their acceptance of the Revised DRP.  Accordingly, there is nothing to be gained by filing an amended complaint in this matter.

## CONCLUSION

For over a year, Plaintiffs have desperately tried to maintain their claims before this Court despite their clear contractual and equitable obligations to submit their claims to arbitration.  Plaintiffs' have filed a total of six memoranda before this Court in an attempt to avoid the legally binding effects of their arbitration agreements.  They have attempted to confuse the issues by filing a Motion for Leave to File an Amended Complaint, which is entirely futile in light of the pending Motion to Compel Arbitration.  In the 13 months since they filed their Class Action Complaint, they have come forward with just five opt-in Plaintiffs.  With each new opt-in, Plaintiffs have pursued the same set of unavailing legal arguments, including, for example,

---

[7]     Furthermore, Plaintiffs' proposed bifurcated classes place a burden on the Court to determine, on an individualized basis, what arbitration agreements each and every Plaintiff signed and when they signed them.  This is further highlighted by the need to create a chart to understand each named Plaintiff's individual status in this litigation.  Such individualized inquiry is inappropriate in the context of a class or collective action.

alleging they did not know what they were signing or do not recall signing it, claiming that the agreements are invalid because they are "click through" agreements, and asserting that – despite clear language to the contrary – the agreements apply only prospectively.  Plaintiffs now claim that Cummings is the opt-in who can salvage their cause of action before this Court.  However, the introduction of Cummings to the case does nothing to advance Plaintiffs' interests and constitutes a mere rehashing of old and meritless arguments.  Cummings accepted the Revised DRP, and, like his co-Plaintiffs, is bound by its terms to pursue his claims solely on an individual basis in arbitration.

For each of the reasons set forth in this memorandum, and for the reasons set forth in Defendants' previous memoranda in support of their Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint and in opposition to Plaintiffs' Motion for Leave to File an Amended Complaint, Defendants respectfully request that this Court (a) dismiss Plaintiffs' Class Action Complaint in its entirety and compel arbitration, and (b) deny Plaintiffs' Motion for Leave to File an Amended Complaint.

Dated: May 18, 2017                              Respectfully submitted,


                                                 s/ Anne B. Sekel
                                                 _____
                                                 Anne B. Sekel
                                                 FOLEY & LARDNER LLP
                                                 90 Park Avenue
                                                 New York, NY 10016
                                                 Telephone: 212-682-7474
                                                 Fax: 212-687-2329
                                                 asekel@foley.com

                                                 *Attorneys for Defendants*


Erin C. Horton
James M. Nicholas
Donald W. Schroeder
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, MA 02199
Telephone: 617-342-4000
Fax: 617-342-4001
ehorton@foley.com
jnicholas@foley.com
dschroeder@foley.com

*OF COUNSEL*