UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                               :

CUNEYT KUTLUCA AND TANIQUA   :
BROWN, *individually and on behalf of all*   :
*others similarly situated*,   :
                               :

                   Plaintiffs,   :

         - against -   :
                               :

PQ NEW YORK INC., PQ OPERATIONS   :
INC., PQ LICENSING S.A., PQ 933   :
BROADWAY, INC., PQ CENTRAL PARK,   :
DOES 1-51,   :
                               :

             Defendants   :
                               :
------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 7/10/2017

16-CV-3070 (VSB)

**MEMORANDUM & OPINION**

<u>Appearances:</u>

Christopher Q. Davis
Rachel M. Haskell
The Law Office of Christopher Davis
New York, New York
*Counsel for Plaintiffs*

Anne B. Sekel
Foley & Lardner LLP
New York, New York

*and*

Erin C. Horton
James M. Nicholas
Donald W. Schroeder
Foley & Lardner LLP
Boston, Massachusetts
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Plaintiffs commenced this wage and hour putative class and collective action against

Defendants PQ New York, Inc., PQ Operations, Inc., PQ 933 Broadway, Inc., PQ Central Park, Inc., and P.Q. Licensing S.A. (collectively, "Defendants") alleging various violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law, Art. 19 § 650 *et seq.* ("NYLL").  Before me is Defendants' motion to compel arbitration and dismiss Plaintiffs' class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. 52.)  Also before me is Plaintiffs' motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a).  (Doc. 87.)  For the reasons set forth herein, I find that Plaintiffs' claims fall within the scope of the parties' binding arbitration agreement, and thus Defendants' motion to compel arbitration, (Doc. 52), is GRANTED.  In addition, because I find that the claims asserted in Plaintiffs' proposed amended complaint are also subject to the parties' binding arbitration agreement, the proposed amendment is futile and thus Plaintiffs' motion for leave to file an amend complaint, (Doc. 87), is DENIED.

## I.     <u>Background</u>

### A.     *Plaintiffs' FLSA and NYLL Claims*

Defendants own Le Pain Quotidien restaurants throughout the United States.  (Compl. ¶¶ 1, 9.)[1]  Plaintiffs Cuneyt Kutluca, Taniqua Brown, Angelica George, Jose Martinez, and Ryan Cummings (collectively, "Plaintiffs") were employed by Defendants as tipped servers and/or baristas at certain of Defendants' restaurants located in New York.  (*Id.*)  Plaintiffs allege that Defendants violated the FLSA and NYLL by failing to pay Plaintiffs the federal and New York minimum and overtime wages, failing to pay "spread of hours" pay, unlawfully retaining Plaintiffs' earned tips, failing to provide required notices, and failing to pay for the cost of laundering required uniforms.  (*Id.* ¶ 4.)  Plaintiffs bring their claims on behalf of themselves and

---

[1] "Compl." refers to the Class Action Complaint filed April 25, 2016.  (Doc. 1.)

on behalf of similarly situated individuals.  (*Id*. ¶¶ 36, 84.)

### B.      *Defendants' Relationship with TriNet*

In December 2014, Defendant PQ New York, Inc. entered into a customer service agreement with TriNet Group, Inc. ("TriNet"), pursuant to which TriNet would provide professional employer organization services to Defendants, including administering payroll and healthcare benefits.  (Gordon Decl. ¶ 2.)[2]  In addition, the agreement provided that TriNet and PQ New York, Inc. would be co-employers, which means that TriNet and PQ New York, Inc. agreed to share certain employer responsibilities with respect to Defendants' employees.  (*Id*.) Under the agreement, Defendants, as the "worksite employer," retained responsibility for directing the day to day work of employees, and TriNet became responsible for providing human resources and compliance support, administering benefits, and processing payroll.  (*Id*.)

Passport is TriNet's Human Resource Information System for payroll and benefits management.  (*Id*. ¶ 3.)  Defendants' employees utilize Passport for all their human resource needs, including but not limited to, payroll processing, benefits enrollment, paid time off requests, workers' compensation issues, and accessing copies of pay stubs and tax forms.  (*Id*.)

In December 2014, Defendants informed their existing employees that they were entering into a co-employer relationship with TriNet.  (*Id*. ¶ 4.)  During the weeks of December 8 and 15, 2014, Defendants held information sessions for their existing employees regarding Passport. (*Id*.)  All Defendants' existing employees were directed to access Passport through its electronic portal and instructed to complete electronic documentation regarding the terms and conditions of their employment, payroll processing, and benefits administration.  (*Id*.)  From December 2014

---

[2] "Gordon Decl." refers to the Declaration of Timothy M. Gordon submitted in support of Defendants' motion to compel arbitration and dismiss Plaintiffs' class action complaint.  (Doc. 54.)

until the present, Defendants' new employees were required to attend a new employee orientation during which they were informed of the co-employer relationship between TriNet and Defendants.  (*Id.* ¶ 5.)  During a new employee orientation, new employees are directed to the Passport portal and instructed to complete necessary electronic documentation regarding the terms and conditions of their employment, payroll processing, and benefits administration.  (*Id.*) If this electronic documentation is not completed by the new employee within three days of their date of hire their employment is terminated.  (*Id.*)

Since Defendants and TriNet entered into their co-employer relationship, employees' paychecks list both Le Pain Quotiden and TriNet HR as their employer.  (*Id.* ¶ 8.)  Employees with questions or problems related to their payroll could contact either PQ's Human Resources department or TriNet's Solutions Center, and PQ and TriNet would work together to resolve any issues regarding payroll, including by TriNet making a payroll adjustment in an employee's next paycheck or issuing a hardcopy check to an employee.  (*Id.* ¶ 7.)

### C.    Terms and Conditions Agreement and Dispute Resolution Protocol

TriNet's Passport is a password-protected on-line environment, and when every worksite employee first accesses the Passport system they must enter both a username and a temporary password, provided by Defendants as the worksite employer.  (Belloise Decl. ¶ 8.)[3]  Employees are then required to change their temporary password and generate their own unique passwords at the beginning of their employment.  (*Id.*)  When a first time user of the Passport portal logs into his or her account, the first screen the user sees is an electronic version of TriNet's Terms and Conditions Agreement ("TCA").  (*Id.* ¶¶ 8, 10.)  The TCA contains, among other things,

---

[3] "Belloise Decl." refers to the Declaration of Michael Belloise submitted in support of Defendants' motion to compel arbitration and dismiss Plaintiffs' class action complaint.  (Doc. 55.)

TriNet's dispute resolution protocol ("DPR").  (*Id*. ¶ 10.)  The first time user is also required to enter a valid e-mail address at the bottom of the screen and then click on a button marked "I Accept."  (*See id*. ¶ 15.)  Accepting the TCA and DRP is a condition of employment with TriNet.  (*Id*. ¶ 11.)  Thus, users of TriNet's Passport portal, including Plaintiffs, cannot access the rest of the Passport system until they accept the terms of the TCA and DRP.  (*Id*.)

Upon logging into the Passport portal, the user is presented with the TCA which begins with the following text:  "**PLEASE READ THIS TCA CAREFULLY.  IT CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLIND OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET OR A TRINET CUSTOMER . . . .**"  (TCA *preamble*.)  Section 1 of the TCA is titled "Co-Employment vs. Standard Employment" and states, in part, that:

> If your relationship with TriNet is beginning because the company at which you work has become a TriNet customer, this means that your company has entered into a customer service agreement with TriNet to share certain employer responsibilities as co-employers. . . .  This TCA addresses your relationship with TriNet and you and your worksite employer have and will continue to have additional terms and conditions of employment.

(TCA § 1.)  Section 9 of the TCA sets forth TriNet's DRP.  (TCA § 9.)  Section 9(a) of the TCA is titled "How The DRP Applies" and states, in part, that:

> This DRP covers any dispute arising out of or relating to your employment with TriNet.  The Federal Arbitration Act applies to this DRP.  Also, existing internal procedures for resolving disputes, as well as the options of mediation, will continue to apply with the goal being to resolve disputes before they are arbitrated.  This DRP will survive termination of the employment relationship.  With only the exceptions described below, arbitration will replace going before a government agency or a court for a judge or jury trial.

(TCA § 9(a).)  Section 9(b) of the TCA is titled "Limitations On How The DRP Applies" and states, in part, that:

> This DRP does not apply to claims for workers compensation, state disability

> insurance or unemployment insurance benefits. . . .  Nor does this DRP apply to any disputes that are, at the time of your acknowledgement of the DRP, already the subject of an existing lawsuit or agency proceeding.

(TCA § 9(b).)  Section 9(f) of the TCA is titled "Enforcement Of The DRP" and states, in part, that "[t]his DRP is the full and complete agreement relating to arbitration as the means to resolve covered disputes between you and TriNet and between you and your worksite employer unless the DRP is waived by your worksite employer or superseded by other terms and conditions of your employment with your worksite employer."  (TCA § 9(f).)  Section 10 of the TCA is titled "Acknowledgement" and provides, in part, that:

> By clicking below, I am acknowledging that I have read and understand the contents of this Terms and Conditions Agreement (including, but not limited to, the DRP), that I have the responsibility to read and familiarize myself with the TriNet Employee Handbook and Additional Policies for my company and that I agree to abide by the terms and conditions set forth above and the policies and procedures set forth in the Employee Handbook and Additional Policies.

(TCA § 10.)

TriNet revised the terms of the TCA and DRP in late 2015 ("Revised TCA and DRP" or individually, "Revised TCA" and "Revised DRP").  (Folsom Supp. Decl. ¶ 14.)[4]  Following TriNet's adoption of the Revised TCA and DRP, the first time users of TriNet's Passport portal, including Plaintiffs, logged into their Passport account they were presented with an electronic version of the Revised TCA and DRP.  (*Id.*)  Even if a user had already accepted the prior version of the TCA and DRP, he or she could not access the rest of the Passport system until he or she accepted the terms of the Revised TCA and DRP.  (*Id.*)

Section 9(a) of the Revised DRP states, in part, that:

> this DRP covers any dispute arising out of or relating to your employment with

---

[4] "Folsom Supp. Decl." refers to the First Supplemental Declaration of Grant Folsom submitted in support of Defendants' motion to compel arbitration and dismiss the class action complaint, dated October 17, 2016.  (Doc. 90.)

TriNet and/or, if you work for one of TriNet's customers, arising out of or relating to your employment with your company, as well as any dispute with a benefit plan, insurer, employee, officer or director of TriNet or of a TriNet customer (all of whom, in addition to TriNet customers, are intended to be beneficiaries of this DRP) ("covered dispute").

(Revised TCA § 9(a).)  Section 9(f) of the Revised DRP is titled "Enforcement Of The DRP" and states, in part, that "[t]his DRP is the full and complete agreement for resolution of covered disputes between you and TriNet (and its employees, officers and agents) and/or, if you work for one of TriNet's customers, between you and your company (and its employees, officers and agents)."  (Revised TCA § 9(f).)

Section 10 of the TCA and Revised TCA contain identical language—the "Acknowledgement" section—which is fixed and is at all times visible to the user in its entirety, without the need to access the scroll bar.  (Folsom Decl. ¶¶ 12, 13; Folsom Suppl. Decl. ¶ 22, Ex. E.)

### D.     Plaintiffs' Agreements to Arbitrate with Defendants

As set forth below, Plaintiffs each accepted the TCA and DRP, and all Plaintiffs except Plaintiff Kutluca accepted the Revised TCA and DRP.  (Docs. 55-2, 118-1.)

Plaintiff Kutluca was employed by Defendants as a server at the 933 Broadway restaurant from February 2015 until August 2015.  (Kutluca Aff. ¶ 2.)[5]  Kutluca states that he "has no recollection of signing into TriNet Passport when [he] first began [his] employment."  (Kutluca Aff. ¶ 7.)  In addition, he states that "he did not have a computer or laptop" and "[t]here were no computers or laptops available during the welcome meeting orientation . . . on February 24,

---

[5] "Kutluca Aff.." refers to the Affidavit of Plaintiff Cuneyt Kutluca which is annexed as Exhibit 1 to the Declaration of Christopher Davis in Opposition to Defendants' Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint ("Davis Declaration").  (Doc. 71-1.)  I note that the parties' joint submission that sets forth, in chart form, each Plaintiff's respective employment dates and relevant agreement or agreements with Defendants, and indicates that Kutluca was employed by Defendants until October 7, 2015, rather than August 2015 as stated in Kutluca's affidavit.  (Doc. 118-1.)

2015." (*Id.* ¶¶ 5, 6.)  Kutluca acknowledges, however, that TriNet sent him an email confirmation indicating that he accepted the TCA and DRP while he was in attendance at the new employee orientation on February 24, 2015.  (Pls.' Opp. 3 (citing Kutluca Aff. ¶¶ 3-7; Belloise Decl. Ex. B).)[6]

Plaintiff Brown was employed by Defendants as a server at the 922 Seventh Avenue restaurant and as a barista at the 11th Street restaurant from August 2012 until August 2015.  (Brown Aff. ¶ 2.)[7]  On December 28, 2014, Brown logged into the TriNet Passport portal using her home computer.  (*Id.* ¶ 9.)  Upon logging into the TriNet Passport portal, Brown "was provided with an 'Employee ID' and prompted to set up a password."  (*Id.* ¶ 10.)  Brown does "not recall clicking any box accepting the [TCA, the DRP] or class action waiver," (*id.* ¶ 11), and does "not recall reading the contents of the TCA, the DRP or the Class Action Waiver," (*id.* ¶ 12).  Later that same day, Brown received an email from TriNet which attached the TCA and DRP that she had accepted earlier that day.  (*See* Doc. 55-3.)

On February 11, 2016, Brown logged into the TriNet Passport portal and retrieved her W-2 form.  (*Id.* ¶ 19.)  She does not "recall any window or pop-up requiring that [she] accept the terms and conditions of [the Revised TCA and DRP]."  (*Id.*)  However, later that same day, Brown received an email from TriNet which attached the Revised TCA and DRP that she had accepted earlier that day.  (*See* Doc. 71-4.)

Plaintiff George was employed by Defendants as a barista and server in various

---

[6] "Pls.' Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint, filed September 9, 2016.  (Doc. 70.)

[7] "Brown Aff." refers to the Affidavit of Plaintiff Taniqua Brown which is annexed as Exhibit 2 to the Davis Declaration.  (Doc. 71-2.)

restaurants of Defendants from April 2012 until August 2016.  (George Aff. ¶ 2.)[8]  On

December 30, 2014, George logged into the TriNet Passport portal for the first time.  (*Id.*

¶ 4.)  She states that she logged in during her shift, (*id.*), and was "pressured to hurry up

and sign some papers," (*id.* ¶ 5).  George acknowledges that she accepted the TCA and

DRP, (*id.* ¶ 9); however, she states that her manager was "pressuring her" to complete the

process, and she was "never given the opportunity to read through any scrollable

contract," (*id.* ¶ 8).  Later on December 30, George received an email from TriNet which

attached the TCA and DRP that she had accepted earlier that day.  (*See* Doc. 90-4.)

On December 27, 2015, George logged into the TriNet Passport portal and

accepted the Revised TCA and DRP.  (Folsom Supp. Decl. ¶ 16.)  Later on December 27,

George received an email from TriNet which attached the Revised TCA and DRP that

she had accepted earlier that day.  (*See* Doc. 90-4.)

Plaintiff Martinez was employed by Defendants from September 2014 until at

least January 2016.  (Doc. 118-1.)  Plaintiff Martinez was employed by Defendants at

various restaurants of Defendants in California and New York.  (Doc. 103.)  On January

18, 2016, Martinez logged into the TriNet Passport portal and accepted the Revised TCA

and DRP.  (Folsom 2d Suppl. Decl. ¶ 8.)[9]  Martinez received an email later that same day

from TriNet which attached the revised TCA and DRP that he had accepted earlier that

day.  (*Id.* ¶ 11, Ex. C.)

Plaintiff Cummings was employed by Defendants as a server at various

---

[8] "George Aff." refers to the Affidavit of Plaintiff Angelica George which is annexed as Exhibit 1 to Plaintiffs' Surreply to Defendants' Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint.  (Doc. 84-1.)

[9] "Folsom 2d Suppl. Decl." refers to the Second Supplemental Declaration of Grant Folsom submitted in support of Defendants' motion to compel arbitration and dismiss the class action complaint, dated May 16, 2017.  (Doc. 115.)

restaurants of Defendants within and outside the state of New York during certain periods

of time between November 2007 and January 2017.  (Cummings Aff. ¶¶ 2-7.)[10]  On April

21, 2016, Cummings attended an orientation program for new hires.  (*Id.* ¶ 9.)[11]

Although Cummings had worked at one of Defendants' restaurants in California for over

three years, he was "required to attend [an] employee orientation again" upon being hired

in 2016 to work at the Bryant Park restaurant in New York City.  (*Id.*)  Cummings used

his iPhone 5 to log into the TriNet Passport portal.  (*Id.* ¶ 14.)  Upon logging into the

TriNet Passport portal, Cummings acknowledges that he accepted the Revised TCA and

DRP.  (*Id.* ¶ 17; *see also* Folsom 2d Suppl. Decl. ¶ 9, Ex. B.)  At the time he "clicked

'accept'" on April 21, Cummings was unaware that the Revised TCA "included an

arbitration agreement."  (Cummings Aff. ¶ 17.)  Later on April 21, Cummings received

an email from TriNet which attached the Revised TCA and DRP that he had accepted

earlier that day.  (Folsom 2d Suppl. Decl. ¶ 12, Ex. D.)

## II.     **Procedural History**

Plaintiffs commenced this putative class action by filing their complaint on April 25,

2016.  (Doc. 1.)  In lieu of answering, on July 7, 2016, Defendants filed a pre-motion letter

regarding their anticipated motion to compel arbitration and dismiss the complaint.  (Doc. 35.)

Plaintiffs submitted their response letter on July 15. (Doc. 42.)  I held the pre-motion conference

regarding Defendants' anticipated motion on July 29, and issued an order after the conference

setting the briefing schedule for Defendants' motion.  (Doc. 48.)  In accordance with that

---

[10] "Cummings Aff." refers to the Affidavit of Plaintiff Ryan Cummings which was submitted in support of Plaintiffs' Supplemental Reply Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and Dismiss Plaintiffs' Class Action Complaint.  (Doc. 113.)

[11] Cummings states that the orientation occurred "[i]n or around May 2016" and the documentary evidence indicates that the exact date of the employee orientation was April 21, 2016.  (Folsom 2d Suppl. Decl. ¶ 9, Ex. D.)

briefing schedule, on August 3, Defendants filed their motion to compel arbitration and dismiss the class action complaint, (Doc. 52), memorandum of law in support of the motion, (Doc. 53), declaration of Timothy Gordon, (Doc. 54), declaration of Michael Belloise with exhibits, (Doc. 55), and a letter requesting oral argument on the motion, (Doc. 56).[12]

On September 9, 2016, Plaintiffs filed their memorandum of law in opposition to Defendants' motion to compel arbitration and dismiss the class action complaint, (Doc. 70), and declaration of Christopher Q. Davis with exhibits, (Doc. 71).  On September 22, Defendants filed their reply memorandum of law in further support of their motion, (Doc. 76), and declarations of Grant Folsom and Karolina Bartnik with exhibits, (Docs. 77, 78).

To allow the parties an opportunity to respond to all the arguments and evidence raised in the briefing on Defendants' motion to compel arbitration and dismiss the class action complaint, I granted separate requests by Plaintiffs and Defendants to file a sur-reply and sur-sur-reply, respectively, (Docs. 81, 86).  Accordingly, on October 10, Plaintiffs filed their sur-reply in opposition to the motion, (Doc. 84), and, on October 17, Defendants filed their sur-sur-reply in support of the motion, (Doc. 89).

In the midst of the briefing on Defendants' motion to compel arbitration and dismiss the class action complaint, on September 1, 2016, Plaintiffs submitted a pre-motion letter regarding their anticipated motion for leave to file an amended complaint.  (Doc. 68.)  Defendants submitted their letter in opposition to Defendants' motion on September 7.  (Doc. 69.)  I issued a memo endorsement on September 9 which (i) granted Plaintiffs' application to proceed with a motion seeking leave to file an amended complaint, (ii) directed the parties to submit a letter

---

[12] On September 9, 2016, I granted the request of Defendant P.Q. Licensing S.A. to join the motion to compel arbitration.  (Doc. 72.)

setting forth an agreed briefing schedule regarding that motion, and (iii) instructed the parties to "brief the motion and address the proposed amendment in light of the motion to compel arbitration." (Doc. 72.) In accordance with the agreed upon briefing schedule, (Doc. 75), on October 14, Plaintiffs filed their motion for leave to file an amended complaint, (Doc. 87), and the memorandum of law in support of the motion, (Doc. 88). On November 10, Defendants filed their memorandum of law in opposition to the motion to amend, (Doc. 92), and request for oral argument regarding the motion, (Doc. 93). On November 18, Plaintiffs filed their reply memorandum of law in support of their motion to amend. (Doc. 94.) In accordance with my November 28 order, (Doc. 98), Defendants filed their sur-reply in further opposition to Plaintiffs' motion for leave to file an amended complaint on December 2, (Doc. 99), and Plaintiffs filed their sur-sur-reply in support of the motion on December 9, (Doc. 100).

In February 2017, Plaintiffs filed consent forms for additional opt-in plaintiffs, and the parties requested leave to supplement their briefing with respect to the motion compel arbitration and motion for leave to amend the complaint. (*See* Docs. 101-110.) On March 1, 2017, I held a telephone conference to discuss how to complete briefing on the motions. In accordance with my March 7 order, (Doc. 111), Plaintiffs submitted their supplemental reply memorandum of law and the affidavit of Ryan Cummings on May 5, (Docs. 112, 113), and Defendants submitted their supplemental memorandum of law in support of the motion to compel arbitration and supporting declarations on May 18, (Docs. 114-117). On May 26, the parties submitted a chart summarizing when each Plaintiff accepted the TCA and DRP and/or the Revised TCA and DRP. (Doc. 118.)

### III.    **Defendants' Motion to Compel Arbitration**

Defendants move to compel arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. ("FAA") and also to dismiss Plaintiffs' class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

#### A.    *Applicable Law*

Section 4 of the FAA requires courts to compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2).  A court must therefore first determine whether:  (1) the parties entered into a valid agreement to arbitrate; and (2) the dispute falls within the scope of the arbitration agreement.  *See In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."); *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (stating that courts must consider: (1) "whether the parties agreed to arbitrate," (2) "the scope of that agreement," (3) "if federal statutory claims are asserted, [whether] Congress intended those claims to be nonarbitrable," and (4) if some, but not all, of the claims in the case are arbitrable, whether "to stay the balance of the proceedings pending arbitration" (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998))).

The Court must evaluate a motion to compel arbitration pursuant to the FAA under a standard similar to the standard for a summary judgment motion.  *See Bensadoun v. Jobe-Riat*,

316 F.3d 171, 175 (2d Cir. 2003).  "If there is an issue of fact as to the making of the agreement

for arbitration, then a trial is necessary."  *Id.* at 175 (citing 9 U.S.C. § 4).  However, the "party to

an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the

agreement to be inapplicable or invalid."  *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124

(2d Cir. 2010); *accord Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he

party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

arbitration."); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43

(S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration

agreement is invalid under a defense to contract formation, or asserts that the arbitration contract

does not encompass the claims at issue, either way, the resisting party shoulders the burden of

proving its defense."  (internal quotation marks omitted)).  "If the party seeking arbitration has

substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest

on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."

*Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995).

"Arbitration agreements are considered contracts."  *Nat'l Credit Union Admin. Bd. v.

Goldman, Sachs & Co.*, 775 F.3d 145, 148 (2d Cir. 2014) (citing *Rent-A-Center, West, Inc. v.

Jackson*, 561 U.S. 63, 67 (2010)).  Accordingly, "though the presumption in favor of arbitration

is strong, the law still requires that parties actually agree to arbitration before it will order them

to arbitrate a dispute."  *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir.

2003).

"[T]he ultimate question of whether the parties agreed to arbitrate is determined by state

law."  *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002).[13]  Under New York law, the

---

[13] Because (1) all or a substantial part of the alleged events or omissions giving rise to the claims occurred in New York, (2) Defendants allegedly operate restaurants located in New York (Compl. ¶¶ 13-14), and (3) Plaintiffs were

party seeking arbitration bears the burden of proving that a valid arbitration agreement exists, *id.* (citing *Am. Centennial Ins. Co. v. Williams*, 649 N.Y.S.2d 190, 191 (2d Dep't 1996)), but need only prove the existence of a valid arbitration agreement by a preponderance of the evidence, *see Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).  "[T]o create a binding contract, there must be a meeting of the minds."  *Highland HC, LLC v. Scott*, 978 N.Y.S.2d 302, 306 (2d Dep't 2014).  However, it is settled New York law that "a party will not be excused from his failure to read and understand the contents" of a document.  *Johnson v. Thruway Speedways, Inc*., 407 N.Y.S.2d 81, 83 (3d Dep't 1978).  The general rule under New York law is that "a party who executes a contract is considered bound by the terms of that contract."  *Stern v. Espeed, Inc*., No. 06 Civ. 958 (PKC), 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006).  "[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them."  *Fleming v. J. Crew*, No. 1:16-cv-2663-GHW, 2016 WL 6208570, at *3 (S.D.N.Y. Oct. 21, 2016) (internal quotation marks and alterations omitted) (quoting *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)).

### B.    Analysis

Based on a review of the parties' numerous and extensive submissions, it is clear that: (1) each Plaintiff entered into at least one agreement to arbitrate, (2) the arbitration agreements

---

allegedly employed by Defendants in New York, (*id.* ¶¶ 6-7), I will apply New York law to the question of whether the parties entered into the TCA and DRP and/or Revised TCA and DRP and thereby assented to arbitration of any dispute relating to their employment with Defendants.  *See Software for Moving, Inc. v. La Rosa Del Monte Exp., Inc*., No. 08 Civ. 986 (JGK), 2009 WL 1788054, at *7 (S.D.N.Y. June 23, 2009), *aff'd*, 419 F. App'x 41 (2d Cir. 2011) (summary order).  The parties do not claim that the law of another state applies, and both cite New York law in their briefs.

are valid, and (3) Plaintiffs' claims fall within the scope of those agreements.[14]

There is no dispute that Plaintiffs Kutluca, Brown, and George clicked "I Accept" to the terms of the TCA and DRP; likewise, there is no dispute that all Plaintiffs except Kutluca clicked "I Accept" to the terms of the Revised TCA and DRP. (Doc. 118-1.) Although Plaintiffs[15] raise various arguments that they should not be bound by the DRP or Revised DRP, none of their arguments are persuasive.

Plaintiff Kutluca states that he does not recall signing into TriNet's Passport portal, and thus he does not recall clicking "I Accept" to the terms of the DRP, (Kutluca Aff. ¶¶ 7, 8),[16] and Plaintiff Brown states that she does not recall reading the contents of the TCA and DRP, (Brown Aff. ¶¶ 11, 12); however, failing memories do not absolve a party from its contractual obligations, *see Stern*, 2006 WL 2741635, at *2, or create a triable issue of fact, *see Vardanyan v. Close-Up Int'l, Inc.*, 315 F. App'x 315, 317-18 (2d Cir. 2009) (summary order) (noting that party's "statement that he does not remember whether he signed the document does not conflict with the testimony and evidence that defendants have submitted about the terms of that agreement"). Moreover, whether or not Plaintiffs remember accepting the TCA and DRP, the evidence demonstrates that Plaintiffs could not have proceeded to use the Passport system or continued to be employed by Defendants unless they accepted the TCA and DRP, (Belloise Decl.

---

[14] There is no dispute that Plaintiffs' FLSA and NYLL claims are arbitrable. *See Sutherland v. Ernst & Young, LLP*, 726 F.3d 290, 292 n.1, 299 (2d Cir. 2013).

[15] Plaintiff Martinez has not submitted any evidence challenging his acceptance of the Revised TCA and DRP.

[16] Kutluca also claims that "he did not have a computer or laptop" and "[t]here were no computers or laptops available during the welcome meeting orientation . . . on February 24, 2015." (Kutluca Aff. ¶¶ 5, 6.) Kutluca appears to be suggesting that someone else accessed the Passport system. Kutluca's claims are belied by the facts and his own admissions. A first time user of the Passport system is required to change their temporary password, generate their own unique password, enter a valid e-mail address at the bottom of the screen, and then click on a button marked "I Accept." (Belloise Decl. ¶ 15.) Kutluca acknowledges that TriNet sent him an email confirmation indicating that he accepted the TCA and DRP while he was in attendance at the new employee orientation on February 24, 2015. (Pls.' Opp. 3 (citing Kutluca Aff. ¶¶ 3-7; Belloise Decl. Ex. B).)

¶¶ 13-21), which renders Plaintiffs' failing memories irrelevant, *see Zaltz v. JDate*, 952 F. Supp. 2d 439, 451-52 (E.D.N.Y. 2013) (holding that plaintiff accepted terms of agreement where it was "clear that in order to have obtained a JDate.com account . . . plaintiff clicked the box confirming that she had both read and agreed to the website's Terms and Conditions of Service . . . even though she does not recall the specific terms at this time"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834-35 (S.D.N.Y. 2012) (holding that "[a]s a matter of logic" plaintiff must have accepted Facebook's terms of service, even if she does not remember, because putative users cannot become users without accepting the terms of service).

Plaintiff Cummings states that he was unaware that the Revised TCA and DRP contained an agreement to arbitrate, (Cummings Aff. ¶ 17); however, a party who accepts an agreement is conclusively presumed to know its contents and assent to them, *Fleming*, 2016 WL 6208570, at *3.

Plaintiff George claims that, during her shift, she was pressured and hurried by her manager to accept the TCA and DRP without being given a chance to read their terms.  (George Aff. ¶¶ 5, 8.)  Putting aside whether Plaintiff George knowingly accepted the TCA and DRP in December 2014, she accepted the Revised TCA and DRP in December 2015 and does not challenge the circumstances surrounding that acceptance.  Similarly, putting aside Plaintiff Brown's acceptance of the TCA and DRP in December 2014, her claims would nevertheless be subject to arbitration because she accepted the Revised TCA and DRP in February 2016 and does not challenge the circumstances surround that acceptance.

Next, I find that the agreements to arbitrate, as set forth in the DRP and Revised DRP, are valid and enforceable.  Plaintiffs had adequate notice that the TCA and Revised TCA contained an arbitration provision.  The DRP and Revised DRP are set forth in full in the TCA and Revised

TCA, as opposed to being viewable only by clicking on a hyperlink. *See Meyer v. Kalanick*, 199 F. Supp. 3d 752, 766 (S.D.N.Y. 2016) (holding arbitration provision unenforceable where provision was "accessible only via a small and distant hyperlink"). The first words of the TCA and Revised TCA which are viewable upon logging into the Passport portal are: "**PLEASE READ THIS TCA CAREFULLY**." (TCA *preamble*.) The Revised TCA goes on to state this TCA "**CONTAINS IMPORTANT INFORMATION REGARDING . . . THE HANDLING OF ANY DISPUTES ARISING OUT OF YOUR RELATIONSHIP WITH TRINET OR A TRINET CUSTOMER . . .** ." (Revised TCA *preamble*.) Moreover, the "Acknowledgement" section of the TCA and Revised TCA, located at the bottom of the screen, was visible to Plaintiffs from the time they logged into Passport until they clicked "I Accept," and it further references dispute resolution. (Folsom Decl. ¶¶ 12, 13; Folsom Suppl. Decl. ¶ 22, Ex. E; TCA § 10.) In light of these facts, I find that the DRP and Revised DRP were reasonably conspicuous. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016). Moreover, Plaintiffs' "failure to fully read and question" the DRP or Revised DRP before clicking "I Accept" does not render the arbitration clause unenforceable. *See Gold*, 365 F.3d at 149. In addition, although the decisions are not binding on me, I note that two district courts in California have reviewed this precise TCA and DRP and held that the DRP is valid and enforceable. *See Zelkind v. Flywheel Networks, Inc.*, No. 15-cv-03375-WHO, 2015 WL 9994623 (N.D. Cal. Oct. 16, 2015); *Langford v. Hansen Techs., LLC*, No. 14cv1870-CAB (BGS), 2014 U.S. Dist. LEXIS 184878, at *7 (S.D. Cal., Nov. 19, 2014).

Finally, I determine whether Plaintiffs' FLSA and NYLL claims fall within the scope of the DRP and Revised DRP. The terms of the Revised DRP unequivocally provide that, subject

to enumerated limitations,[17] any dispute arising out of or relating to the employee's employment relationship with the worksite employer, here Defendants, is subject to arbitration.  (Revised TCA § 9(a).)  In addition, Section 9(f) of the Revised DRP states that the "DRP is the full and complete agreement for the resolution of covered disputes between" the employee and the worksite employer, here Defendants.  (*Id*. § 9(f).)  Accordingly, the FLSA and NYLL claims asserted by Plaintiffs Brown, George, Martinez, and Cummings, i.e., those Plaintiffs who accepted the Revised DRP, fall within the scope of the Revised DRP.  (Doc. 118-1.)

Plaintiffs argue that Plaintiff Kutluca's FLSA and NYLL claims do not fall within the scope of the DRP because the language in Section 9(a) of the original DRP does not reference the worksite employer.  It states "[t]his DRP covers any dispute arising out of or relating to your employment with TriNet."  (TCA § 9(a).)  However, Section 9(f) of the DRP, titled "Enforcement of the DRP," expressly references the worksite employer as a party who is vested with the right to enforce the DRP with respect to covered disputes.  (TCA § 9(f).)  In addition, Section 9(f) also states that covered disputes against the worksite employer are subject to the DRP "unless the DRP is waived by [the] worksite employer."  (*Id*.)  This clause further demonstrates that the parties intended disputes against the worksite employer to fall within the scope of the DRP.  Accordingly, Plaintiff Kutluca's FLSA and NYLL claims fall within the scope of the DRP.

Next, Plaintiffs argue that the DRP does not apply retroactively and thus claims that arose before Plaintiffs first accepted the DRP are not subject to arbitration.  This argument fails for at least two reasons.  First, the weight of authority supports applying broad arbitration provisions

---

[17] Specifically, "covered disputes" fall within the scope of the DRP, and "covered disputes" refers to any dispute relating to the employee's employment with TriNet or the worksite employer subject to the enumerated limitations set forth at Section 9(b) of the Revised DRP.  (*See* Revised TCA § 9(a).)

retroactively where they do not contain temporal limitations.  The DRP and Revised DRP are

undeniably broad, and "the Second Circuit has held that, in the absence of language explicitly

limiting an otherwise broad arbitration agreement to post-agreement disputes, the agreement

should be deemed retroactive."  *Schapp v. MasTec Servs. Co.*, No. 6:12-CV-841 (LEK/DEP),

2014 WL 1311937, at *3 (N.D.N.Y. Mar. 31. 2014) (citing *Coenen v. R.W. Pressprich & Co.*,

453 F.2d 1209, 1212 (2d Cir. 1979) (holding arbitration clause applied retroactively because

"[h]ad those who drafted the clause intended otherwise they doubtless would have used language

plainly stating that 'any future controversy'" would be subject to arbitration)); *see Smith/Enron*

*Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999)

(holding arbitration agreement applied retroactively where clause contained no temporal

limitation); *see also Lai Chan v. Chinese-Am. Planning Council Home Attendant Program, Inc.*,

No. 15-cv-9605 (KBF), 2016 WL 3004518, at *2 (S.D.N.Y. Apr. 8, 2016) (same); *Ryan, Beck &*

*Co. v. Fakih*, 268 F. Supp. 2d 210, 224 n.28 (E.D.N.Y. 2003) (compelling arbitration and

declining to superimpose temporal limitation on broad agreement to arbitrate).  The DRP and

Revised DRP also do not contain temporal limitations.  Plaintiffs fail to distinguish or even

address this case law, and I find that those cases control.  Second, the plain language of the DRP

suggests that the parties intended for it to apply retroactively.  The DRP states, in relevant part,

that it does not "apply to any disputes that are, at the time of your acknowledgement of the DRP,

already the subject of an existing lawsuit or agency proceeding."  (*See* TCA § 9(b).)  Based on

this language, the parties intended for the DRP to apply retroactively to all claims subject to this

limited carve-out.

As set forth above, I find that (1) each Plaintiff entered into at least one agreement to

arbitrate, (2) the arbitration agreements are valid, and (3) Plaintiffs' FLSA and NYLL claims fall

within the scope of those agreements.  Accordingly, Defendants' motion to compel arbitration and dismiss the class action complaint, (Doc. 52), is GRANTED.

## IV.   **Plaintiffs' Motion to Amend**

Plaintiffs seek to amend their complaint to bifurcate Plaintiffs into subclasses based upon whether Plaintiffs' claims arose before or after they accepted the TCA.  (*See* Doc. 87-1 ¶¶ 67, 117.)

### A.   *Applicable Law*

Under Federal Rule of Civil Procedure 15(a)(2), "[l]eave to amend is to be freely given when justice requires."  *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013). Courts will deny leave to amend in cases of, among other things, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and/or] futility of amendment."  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks omitted).  A request to add additional parties is governed by Federal Rule of Civil Procedure 21 rather than Rule 15, but the "same standard of liberality" applies under both Rules.  *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (internal quotation marks omitted); *see also Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) ("[T]he showing necessary under Rule 21 is the same as that required under Rule 15(a).").

### B.   *Analysis*

Defendants argue that Plaintiffs' motion for leave to amend should be denied as futile because the claims asserted in the proposed amended complaint, like the claims in the original

complaint, are subject to binding arbitration agreements.  (Defs.' Mot. Am. Opp. 3.)[18]  Plaintiffs

argue that their proposed amendment is not futile because "the DRP cannot retroactively apply to

claims that arose prior to TriNet allegedly becoming a co-employer."  (Pls.' Mot. Am. Br. 6.)  As

set forth above, (*see supra* Section III.B), the DRP and Revised DRP apply retroactively, and

thus Plaintiffs' claims as set forth in the proposed pre-TCA and post-TCA sub-classes all fall

within the scope of the DRP and Revised DRP.  Accordingly, Plaintiffs' motion to amend, (Doc.

87), is DENIED as futile.  *See Ferrie v. DirectTV, LLC*, No. 3:15-CV-409 (JCH), 2016 WL

183474, at *15 (D. Conn. Jan. 12, 2016) (citing *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d

122, 126 (2d Cir. 2008) (denying motion to amend as futile where claims asserted in proposed

amended complaint also subject to parties' arbitration agreement)).

V.     **Conclusion**

For the reasons set forth above, Defendants' motion to compel arbitration, (Doc. 52), is

GRANTED, and Plaintiffs' motion for leave to file an amend complaint, (Doc. 87), is DENIED

as futile.  In light of the fact that no party has requested a stay pending arbitration, *see Katz v.

Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015), the case is dismissed, *see Lawrence v. Sol G.

Atlas Realty Co.*, 841 F.3d 81, n.1 (2d Cir. 2016).  In light of the fact that the motions were

decided on the parties' submissions, Defendants requests for oral argument, (Docs. 56, 93), are

DENIED as moot.

---

[18] "Defs.' Mot. Am. Opp." refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave
to File an Amended Complaint, filed November 10, 2016.  (Doc. 92.)

The Clerk's Office is respectfully directed to terminate the open motions and close the case.

SO ORDERED.

Dated: July 10, 2017
New York, New York

Vernon S. Broderick
United States District Judge